### INSURANCE COMPANY *v.* NORTON.

1. An insurance company may waive any condition of a policy inserted therein for its benefit.
2. As the company may at any time, at its option, give authority to its agents to make agreements, or to waive forfeitures, it is not bound to act upon the declaration in its policy that they have no such authority.
3. Whether it has or has not exercised that option is a fact provable by either written evidence or by parol.
4. As denoting the power given by an insurance company to a local agent, evidence is admissible as to its practice in allowing him to extend the time for the payment of premiums and premium notes; and the jury, upon such evidence, may find whether he was authorized to make such an extension, and, if so, whether it was in fact made in the case on trial.
5. In this case, the court holds that the fact that the premium note was already past due when the agreement to extend it was made is not sufficient to prevent that agreement from operating as a waiver of the forfeiture.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This action was brought by Phoebe A. Norton on a policy of insurance, issued by the Knickerbocker Life Insurance Company of New York, on the life of Jesse O. Norton, for the benefit of his wife and children.  The original policy was dated April 20, 1867; and, being partly destroyed by fire, was reissued in April, 1874.  The premium was $385, payable annually on the twentieth day of April in each year; and the

policy, amongst other things, contained the following condition : —

"*Second,* If the said premium shall not be paid on or before twelve o'clock, noon, on the day or days above mentioned for the payment thereof, at the office of the company in the city of New York (unless otherwise expressly agreed in writing), or to agents when they produce receipts signed by the president or secretary, or if the principal of or interest upon any note or other obligation given for the premium upon said policy shall not be paid at the time the same shall become due and payable, then, and in every such case, the company shall not be liable to pay the sum assured, or any part thereof; and said policy shall cease and be null and void, without notice to any party or parties interested herein, except that the stipulation for a new policy, as hereinbefore provided, shall remain in force.

"*Third,* In case a loan of or credit for a portion of said premium shall be made on this policy, said policy shall be subject to all of the terms and conditions expressed in the acknowledgment or obligation given for such loan or credit, and to the payment of interest thereon in advance; and said loan or credit shall be a just counterclaim against any amount which shall become due and payable on the policy, and shall be deducted therefrom."

By an indorsement on the policy, it was declared that "agents of the company are not authorized to make, alter, or abrogate contracts, or waive forfeitures."

The insured died on the 3d of August, 1875; and the company refused to pay the insurance, on the ground that the policy was forfeited by reason of the non-payment of certain notes given for the last premium, which was due April 20, 1875. It was conceded that all the other premiums had been paid.

The declaration, besides a special count on the policy, contained the ordinary money counts. The defendant pleaded the general issue, and, specially, that the premium notes were not paid at maturity, and that the policy thereby became forfeited. The plaintiff replied, first, that the agent of the defendant at Chicago, regularly authorized by the defendant so to do, extended the time of payment of the first note, which became due on the 20th of June, to the 20th of July, when she tendered the amount thereof to the agent, who refused to receive

the same; and that she also tendered the amount of the second note at its maturity, which was likewise refused: secondly, that, after the maturity of the first note, the agent of the defendant, regularly authorized so to do, waived all advantages the company might have claimed because of its non-payment at maturity, and extended the time of payment, as before stated, with an averment of tender and refusal. The defendant, by way of rejoinder, denied that it had extended the time of payment, or that it had waived any advantages, as alleged. This was the issue at the trial.

It appeared on the trial that the premium in question was settled by the payment of $50 in cash, and the balance in two promissory notes given by Jesse O. Norton to the insurance company, payable respectively in two and three months, and maturing, one on the 20th of June, the other on the 20th of July, 1875. Each note contained a clause, declaring that if it were not paid at maturity the policy would be void, — this being the usual form of premium notes.

On the issue as to extension of time on the notes, and the authority of the agent to grant it, the plaintiff produced three witnesses: Randall, agent of the company down to March, 1874; Frary, his successor, who was agent at the time in question; and Martin Norton, son of the insured, who acted in behalf of his father in reference to the alleged extension, and to the tender of payment.

The testimony of these witnesses tended to show that formerly the company had allowed their agent to extend time on premium notes for a period of ninety days; that this indulgence was afterwards reduced to sixty days, and then to thirty; and that, at the period in question, the agent was required, as a general thing, to return the notes in his hands if not paid by the 15th of the month following that in which they became due.

As to what took place with reference to the notes in question, there is some conflict in testimony between Martin Norton and the agent, Frary. The former testified, in substance, that he called on the agent, in behalf of his father, in June, 1875, a few days after the first note became due, and told him that his father wished it extended for thirty days; to which the agent agreed, — his answer being, "All right." That he called again

on or about the 8th of July, to request an extension of the other note, which would become due on the 20th of that month, and a further extension of the first note to the 10th of August. That the agent said he would have to write to the company about this. That, on the 13th, he called again, and told the agent that his father had concluded to pay both notes; and the agent gave him the figures, showing what was due on them. That he called again on the 15th, prepared to pay the notes, when he was informed by the agent that he could not receive the money, having received orders from the company to return all the papers to New York, and he had done so. That he then made a legal tender of the amount due on the first note, which was refused. Frary testified that he had no recollection of the first interview, or of agreeing to extend the first note. As to the rest, they did not materially differ.

In addition to the testimony relating to the general practice of the agents in granting extensions of time for the payment of premium notes, evidence was given tending to show that Norton, the insured, had usually received more or less indulgence of that kind.

The counsel for the defendant moved to strike out the testimony touching the usages of the company as to non-payment of prior premium notes by Norton, and prior indulgence thereon to him, as incompetent, and in conflict with the terms of the policy, and as showing no authority in Frary to give the alleged extension; which was without consideration, if made, and after the forfeiture had occurred.

The counsel for the defendant also moved to strike out that portion of Martin Norton's testimony relative to an agreement for an extension of the premium notes, such agreement being without authority on the part of the agent, &c. The court overruled the latter motion; and, as to the first, directed the jury to disregard so much of Randall's testimony as tended to show the conduct of the defendant and plaintiff in regard to former payments; but allowed to stand so much of Randall's and Frary's testimony as tended to show the powers of the agents in reference to giving extensions on premiums or premium notes. This ruling was excepted to.

In charging the jury, the court left it to them to say, from

the evidence, whether the agent of the defendant had power to waive a strict compliance with the terms of the agreement as to the time of paying the notes given for the premium ; and, if he had such power, whether such a waiver was in fact made : if it was, and if the insured offered to pay the notes within the time to which they were extended, and the company refused to receive payment, that then the plaintiff was entitled to recover. The jury were further instructed that the power vested in Randall, the previous agent, was only pertinent as it tended to throw light on the powers vested in his successor, Frary. The defendant's counsel excepted to the charge, and submitted several instructions, the purport of them being, in substance, that, in view of the express provisions of the policy, the evidence was utterly irrelevant and incompetent to show any authority in the agent to grant any indulgence as to the time of paying the notes, and to waive the forfeiture incurred by their non-payment at maturity ; or to show that any valid and legal extension was, in fact, granted, or that the forfeiture of the policy was waived.

These instructions were refused. There was a judgment for the plaintiff, whereupon the company sued out this writ of error.

*Mr. H. G. Miller* and *Mr. Thomas G. Frost* for the plaintiff in error.

The parties are bound by the policy, and the court must enforce it according to its tenor. *Pitt v. Berkshire Life Insurance Co.*, 100 Mass. 500 ; *Roehner v. Knickerbocker Life Insurance Co.*, 4 Daly (N. Y.), 412 ; *Robert v. New England Life Insurance Co.*, 1 Disney (Ohio), 355 ; *Fifty Associates v. Howland*, 5 Cush. (Mass.) 214 ; *Baker v. Union Mutual Life Insurance Co.*, 43 N. Y. 283 ; *Howell v. Knickerbocker Life Insurance Co.*, 3 Robt. (N. Y.) 232 ; *Catoir v. American Life Insurance and Trust Co.*, 33 N. J. L. 487 ; *Wall v. Home Insurance Co.*, 36 N. Y. 157 ; *New York Life Insurance Co. v. Statham et al.*, 93 U. S. 24 ; *Beadle v. Chenango County Mutual Insurance Co.*, 3 Hill (N. Y.), 161 ; *Shaw v. Berkshire Life Insurance Co.*, 103 Mass. 254 ; *Bradley v. Potomac Fire Insurance Co.*, 32 Md. 108 ; *Union Mutual Life Insurance Co. v. McMillen*, 24 Ohio St. 67 ; *Mutual Benefit Life Insurance Co. v. Ruse*, 8 Ga. 534 ; *Sullivan v. Cotton States Life Insurance Co.*, 43 id. 423.

The time of payment in such an instrument is material, and of the essence of the contract, and a failure to pay involves an absolute forfeiture, which the agent had no authority to waive, nor could he grant an extension of time for the payment of the premium note. *Security Insurance Co.* v. *Fay*, 22 Mich. 467.

- When such extension was applied for, the forfeiture of the policy had been already incurred, and the pretended agreement for an extension was void; for want of consideration.

*Mr. S. P. McConnell* for the defendant in error.

Although a policy declares that agents have no power to waive a forfeiture or modify the contract of insurance, the company issuing it may nevertheless, by grant, authorize them to do either, or, by its conduct, estop itself from denying that such grant has been made. *Ætna Insurance Co.* v. *Maguire et al.*, 51 Ill. 342; *Perkins* v. *Washington Insurance Co.*, 4 Cow. (N. Y.) 645; *Lightbody* v. *American Life Insurance Co.*, 23 Wend. (N. Y.) 18; *McEwen* v. *Montgomery County Insurance Co.*, 5 Hill (N. Y.), 101; *Eclectic Life Insurance Co.* v. *Fahrenkrug*, 68 Ill. 463; *Keenan* v. *Missouri State Mutual Insurance Co.*, 12 Iowa, 126.

The extent of the agent's authority is a question for the jury. *Sheldon* v. *Connecticut Mutual Life Insurance Co.*, 25 Conn. 207; *Hough* v. *City Fire Insurance Co.*, 29 id. 10; *Farmers' Mutual Insurance Co.* v. *Taylor*, 73 Pa. St. 342.

A new consideration is not necessary to validate either the waiver of a forfeiture or an extension of time for the payment of the premium, or of the notes given therefor. *Leslie* v. *Knickerbocker Life Insurance Co.*, 2 Hun. (N. Y.), 616; *Viele* v. *Germania Insurance Co.*, 26 Iowa, 9.

A party cannot insist upon a condition precedent, the breach of which he caused. *Young* v. *Hunter*, 6 N. Y. 203.

MR. JUSTICE BRADLEY, after stating the case, delivered the opinion of the court.

The material question in this case is, whether, in view of the express provisions of the policy, the evidence introduced by the assured was relevant and competent to show that the company had authorized its agent to grant indulgence as to the time of paying the premium notes, and waive the forfeiture incurred by

their non-payment at maturity; or to show that any valid extension had, in fact, been granted, or the forfeiture of the policy waived.

The written agreement of the parties, as embodied in the policy and the indorsement thereon, as well as in the notes and the receipt given therefor, was undoubtedly to the express purport that a failure to pay the notes at maturity would incur a forfeiture of the policy. It also contained an express declaration that the agents of the company were not authorized to make, alter, or abrogate contracts or waive forfeitures. And these terms, had the company so chosen, it could have insisted on. But a party always has the option to waive a condition or stipulation made in his own favor. The company was not bound to insist upon a forfeiture, though incurred, but might waive it. It was not bound to act upon the declaration that its agents had no power to make agreements or waive forfeitures; but might, at any time, at its option, give them such power. The declaration was only tantamount to a notice to the assured, which the company could waive and disregard at pleasure. In either case, both with regard to the forfeiture and to the powers of its agent, a waiver of the stipulation or notice would not be repugnant to the written agreement, because it would only be the exercise of an option which the agreement left in it. And whether it did exercise such option or not was a fact provable by parol evidence, as well as by writing, for the obvious reason that it could be done without writing.

That it did authorize its agents to take notes, instead of money, for premiums, is perfectly evident, from its constant practice of receiving such notes when taken by them. That it authorized them to grant indulgence on these notes, if the evidence is to be believed, is also apparent from like practice. It acquiesced in and ratified their acts in this behalf. For a long period, it allowed them to give an indulgence of ninety days; after that, of sixty; then of thirty days. It is in vain to contend that it gave them no authority to do this, when it constantly allowed them to exercise such authority, and always ratified their acts, notwithstanding the language of the written instruments.

We think, therefore, that there was no error committed by the court below in admitting evidence as to the practice of the

company in allowing its agents to extend the time for payment of premiums and of notes given for premiums, as indicative of the power given to those agents ; nor any error in submitting it to the jury, upon such evidence, to find whether the defendant had or had not authorized its agent to make such extensions ; nor in submitting it to them to say whether, if such authority had been given, an extension was made in this case.

Much stress, however, is laid on the fact that the extension claimed to have been given in this case was not given, or applied for, until after the first note became due and the forfeiture had been actually incurred. But we do not deem this to be material. The evidence does not show that any distinction was made in granting extensions before or after the maturity of the notes. The material question is, whether the forfeiture was waived ; and we see no reason why this may not be done as well by an agreement made for extending the note after its maturity, as by one made before. In either case, the legal effect of the indulgence is this : the company say to the insured, Pay your note by such a time, and your policy shall not be forfeited. If the insured agrees to do this, and does it, or tenders himself ready to do it, the forfeiture ought not to be exacted. In both cases, the parties mutually act upon the hypothesis of the continued existence of the policy. It is true, if the agreement be made before the note matures and before the forfeiture is incurred, it would be a fraud upon the assured to attempt to enforce the forfeiture, when, relying on the agreement, he permits the original day of payment to pass. On the other hand, if the agreement be made after the note matures, such agreement is itself a recognition, on the company's part, of the continued existence of the policy, and, consequently, of its election to waive the forfeiture. It is conceded that the acceptance of payment has this effect ; and we do not see why an agreement to accept, and a tender of payment according to the agreement, should not have the same effect. Both are acts equally demonstrative of the election of the company to waive the forfeiture of the policy. Grant that the promise to extend the note is without consideration, and not binding on the company, — which is perhaps true as well when the promise is made before maturity as when it is made afterwards, — still it does not take from the company's act the

legitimate effects of such act upon the forfeiture of the policy. Perhaps the note might be sued on in disregard of the extension; but if it could be, that would not annihilate the fact that the company elected to waive the forfeiture by entering into the transaction. If it should repudiate its agreement, it could not repudiate the waiver of the forfeiture, without at least giving to the assured reasonable notice to pay the money.

Forfeitures are not favored in the law. They are often the means of great oppression and injustice. And, where adequate compensation can be made, the law in many cases, and equity in all cases, discharges the forfeiture, upon such compensation being made. It is true, we held in *Statham's Case* (93 U. S. 24), that, in life insurance, time of payment is material, and cannot be extended by the courts against the assent of the company. But where such assent is given, the courts should be liberal in construing the transaction in favor of avoiding a forfeiture.

The case of leases is not without analogy to the present. It is familiar law, that, when a lease has become forfeited, any act of the landlord indicating a recognition of its continuance, such as distraining for rent, or accepting rent which accrued after the forfeiture, is deemed a waiver of the condition.

In *Doe* v. *Meux* (4 Barn. & Cress. 606) there was a general covenant to repair, and a special covenant to make specific repairs after three months' notice; and a condition of forfeiture for non-performance of covenants. The landlord gave notice to the tenant to make certain specific repairs within three months. This was held a waiver of the forfeiture already incurred under the general covenant. Justice Bailey said: "The landlord, in this case, had an option to proceed on either covenant; and, after giving notice to repair within three months, he might have brought an action against the defendant upon the former covenant, for not keeping the premises in repair. But that is very different from insisting upon the forfeiture. . . . I think that the notice amounted to a declaration that he would be satisfied if the premises were repaired within three months, and that he thereby precluded himself from bringing an ejectment before the expiration of that period."

In *Doe* v. *Birch* (1 Mee. & W. 402), there was a covenant on

the part of the tenant to make certain improvements on the premises within three months, or that the lease should be void. He failed to make the improvements in the manner stipulated; and, after the expiration of the three months, the landlord's son, on his father's behalf, made a demand of a quarter's rent. But, it not appearing that the landlord knew of the tenant's failure with regard to the improvements, it was held that the son had not sufficient authority to waive the forfeiture. Otherwise, it seems, that the demand of the rent would have amounted to a waiver. Baron Parke referred to *Green's Case* (1 Croke, 3), where calling the party a tenant, in a receipt for bygone rent, was held to be sufficient evidence of a waiver, though the acceptance of that rent was not such. And he adds: "If it had been proved that the father had notice of the alterations, and he had still allowed the son to receive the rent, the forfeiture might have been waived. But that was not proved; and the question of waiver does not, therefore, distinctly arise in the case. If it had, the authorities cited show that this was a lease voidable at the election of the landlord. Then, I think that an absolute, unqualified demand of rent, by a person having sufficient authority, would have amounted to a waiver of the forfeiture, and it would have been like the case I cited from Croke's Reports."

In *Ward* v. *Day* (4 Best & Smith, 335), after a forfeiture of a license to gather minerals off of a manor had been incurred, the landlord entered into negotiations with the licensee and his son, to grant to the latter a renewal of the license when it should expire; and terms were agreed on, which the landlord afterwards refused to carry out. It was held, that, by entering into these negotiations, he waived the forfeiture of the original license. The negotiations assumed that the original license was to continue to its termination. The exaction of the forfeiture was in the landlord's election; and he evinced his election not to enforce it by entering into the negotiations. Justice Blackburn says: "Most of the cases in which the doctrine of election has been discussed have been cases of landlord and tenant under a regular lease, in which has been reserved a right of re-entry for a forfeiture; that is, an option to determine the lease for a forfeiture: but this doctrine is not, as Mr. Russell seems to

244 INSURANCE CO. v. NORTON. [Sup. Ct.

think, confined to such cases. So far from that being so, the doctrine is but a branch of the general law, that, where a man has an election or option to enter into an estate vested in another, or to deprive another of some existing right, before he acts he must elect, once for all, whether he will do the act or not. He is allowed time to make up his mind; but when once he has determined that he will not consider the estate or lease, whichever it may be, void, he has not any further option to change his mind." And then the learned judge cites authorities, going back to the Year Books, to show that a determination of a man's election in such cases may be made by express words, or by act; and that if, by word or by act, he determines that the lease shall continue in existence, and communicates that determination to the other party, he has elected that the other shall go on as tenant.

These cases show the readiness with which courts seize hold of any circumstances that indicate an election or intent to waive a forfeiture. We think that the present case is within the reason of these authorities; and that the objection, that the note was already past due when the agreement to extend it was made, is not sufficient to prevent said agreement from operating as a waiver of the forfeiture.

Several minor points were raised by the defendant; but they are all either substantially embraced in the main points already considered, or are not of sufficient force to require special discussion.

We find no error in the record, and the judgment of the Circuit Court is

*Affirmed.*

MR. JUSTICE SWAYNE, MR. JUSTICE FIELD, and MR. JUSTICE STRONG dissented.

MR. JUSTICE STRONG. I dissent from the judgment given in this case. The insurance effected by the policy became forfeited by the non-payment *ad diem* of the premium note. The policy then ceased to be a binding contract. It was so expressly stipulated in the instrument. Admitting that the company could afterwards elect to treat the policy as still in force, or, in other words, could waive the forfeiture, the local agent could

not, unless he was so authorized by his principals. The policy declared that agents should not have authority to make such waivers. And there is no evidence in this case that the company gave to the agent parol authority to waive a forfeiture after it had occurred. They had ratified his acts extending the time of payment of premium notes, when the extension was made before the notes fell due. But no practice of the company sanctioned any act of its agent done after a policy had expired, by which new life was given to a dead contract.