# Railway Passenger & Freight Conductors' Mutual Aid and Benefit Association v. Lucy J. Swartz.

1. MUTUAL BENEFIT ASSOCIATIONS—*Delinquent Members Must Be Treated as Such—Waiver.*—A member of a mutual benefit association was delinquent in paying assessments, but the association, instead of striking his name from the roll, retained it, and continued, by the levying of assessments, to treat him as a member in good standing; afterward, and while delinquent, he was killed. Another member, a friend of the deceased, who was also delinquent, sent in his own assessments and also the deceased's with it; the association accepted that of the live member, but rejected that of the dead. *It was held,* that the association waived its right to forfeit the deceased's membership by continuing to subject him to assessments.

2. SAME—*Waiver of the Right of Forfeiture.*—If a mutual benefit association continues to treat a delinquent as a member in good standing after it has the right to forfeit his membership, he should be considered as a member in good standing for all purposes.

3. SAME—*Waiver of Payment by Subsequent Assessments.*—Where a mutual benefit association makes an assessment against an assured member after he has failed to pay a previous assessment within the time prescribed by the rules, it waives the right to forfeit the policy for such failure, and admits that such delinquent is a member of the association.

4. SAME—*Forfeiture Prevented by Estoppel.*—If the practice of an association and its course of dealings with its members has been such as to induce a belief that so much of their contract of insurance as provides for a forfeiture in a certain event, will not be insisted upon, the association will not be allowed to set up such forfeiture, as against one in whom their conduct has induced such a belief.

**Memorandum.**—Assumpsit on mutual benefit association certificate. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1894, and affirmed. Opinion filed July 2, 1894.

PECK, MILLER & STARR, attorneys for appellant.

GREGORY, BOOTH & HARLAN, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was an action of assumpsit against the appellant by the appellee, claiming as the widow of Sherman S. Swartz, deceased, to recover the amount of a membership benefit ensuing from his death.

The appellant is, as its name indicates, a mutual benefit society, conducted upon the assessment plan, with a membership restricted to railway conductors, not exceeding fifteen hundred in number.

The deceased was a resident of Swanington, Indiana, and was employed as a conductor upon both passenger and freight trains, by the Chicago & Indiana Coal Railroad Company, operated at that place. He became a member of the association on October 24, 1887, and died August 15, 1889, from an injury received, in the performance of his duty, on the day before.

Proofs of his death were duly made out and presented to the appellant, but payment was rejected on the ground that Swartz was delinquent in the payment of assessments and had, in consequence, forfeited his membership.

The constitution of the association provides that in no case shall a greater sum than $2,500 be paid on account of the death or disability of a member, and the by-laws provide that in case of death, the benefit money shall be paid as directed by the last will of the deceased member, or, if he leaves no will, to his widow. Swartz left no will and the appellee is his widow.

The certificate of membership issued to Swartz, omitting the caption only, was as follows:

"CHICAGO, October 24, 1887.

This is to certify that S. S. Swartz, residence Swanington, Indiana, is a member of the Railway Passenger and Freight Conductors' Mutual Aid and Benefit Association.

Given under our hands and the seal of the association affixed.

(SEAL.)                    JOHN R. SANDY, President.

C. HUNTINGTON, Secretary and Treasurer."

In accordance with an instruction given by the court at the request of appellee, that if the jury " find from the evidence and under the instructions of the court, that the plaintiff is entitled to recover, your verdict will be for the maximum amount specified in the certificate, less three assessments payable in June, July and August, 1889, and interest at five per cent from November 1, 1889," the jury returned a verdict in favor of appellee for $3,000, and from a judgment entered upon such verdict this appeal is prosecuted.

The point is made that as it is provided in the constitution that in no case shall the beneficiary receive more than $2,500, and as there is no amount specified in the certificate, the quoted part of the instruction is erroneous.

Had an assessment been made on the membership of the association at the rate of $2.50 for each member, as required

by the constitution, and it had realized a fund less than $2,500, the liability would probably—although that question has not been argued, and therefore our expression is guarded—have been limited to the extent of the fund realized. Metropolitan Accident Association v. Windover, 137 Ill. 417 (on p. 435).

But here no assessment was made to meet the loss occasioned by the death of Swartz. It was alleged in the declaration that an assessment, if made, would have realized more than the full amount of $2,500; and it was proved by the testimony of the clerk of the grand secretary of the appellant association, that there were 206 divisions ·with which the association kept accounts in the months of June, July and August, 1889, averaging about six members, or a little more, to the division, and his testimony to that effect stands in no manner disputed.

That would make a total membership of at least 1,236, upon whom an assessment of $2.50 per member, as required by the constitution and by-laws, would realize more than the maximum benefit to be paid. We therefore think the instruction was correct, that the damages, if any, should be the maximum amount. The point that no amount is specified in the "certificate" is not well taken. The jury evidently were not, and could not well have been misled by the use of the word "certificate" in the instruction. The paper certificate that was delivered to Swartz was a mere evidence of his membership, and did not pretend to constitute the contract between the association and himself. That was to be found in the constitution and by-laws of the association and his application for membership, wherein he agreed to compliance with them.

The amount, if anything was payable, was ascertained and due before November 1, 1889, and properly drew interest from that date.

There are many suggestions by counsel for the appellant, directed to the sufficiency of the declaration and the proof, which we will not stop to consider in this opinion, for we do not regard them as important or at all substantial.

The really important question in the case is involved in the proposition that constituted the main defense below, viz., that Swartz was not a member in good standing at the time of his death.

The constitution and by-laws are in many respects singularly indefinite, but they seem to contemplate a subdivision of membership into sections, or divisions, named after the respective railroads on which the several members are employed. For example, here, Swartz would be known as belonging to the Chicago & Indiana Coal Railroad division of the association, by reason of his employment as conductor on the railroad of that name.

Without providing how such an officer shall be chosen or appointed, the by-laws prescribe the duties and powers of a "local secretary of each road or division."

Articles one, four and five of the by-laws treat of the local secretary, and are as follows:

### "Article I.

"The members of this association on each road, or each division of a road, shall be entitled to one delegate to represent said road or division in annual convention, and in addition thereto, the secretary of each road or division shall also be a delegate. The secretary of each road or division of a road shall, thirty days prior to the meeting of the annual convention, send to the secretary the names of the delegates elected, and the secretary shall issue a certificate to said delegate or delegates, entitling him or them to seats as a representative in said convention.

### "Article IV.

"The local secretary of each road or division shall, in case of the death of any member, after having received a certificate of the death of said member, signed by the attending physician, and with a certificate signed by the undertaker who prepared the body for burial, both having been duly sworn to before a justice of the peace or notary public, forward the same to the secretary, whose duty it shall be to present the same to the board of directors, and with their

endorsement, and the approval of the president, shall notify the local secretary of each road, or division of a road, who will assess each member of said road, or division of a road, the sum of two dollars and fifty cents each, and send such sums of money as collected to the secretary and treasurer.

"Article V.

"The secretary shall, within thirty days after such collections have been made, forward the amount to the legal heirs or representatives of the deceased members, and through the local secretary of said road or division they shall acknowledge and give lawful receipt for the amount of money thus paid and received."

Article six of the constitution, regarding eligibility to membership, provides that a certificate of the requisite facts to entitle an applicant to membership shall be made by the local secretary and accompany each application.

These extracts from the constitution are all that we find pertaining in any way to the local secretary, but are sufficient to show his importance in the system under which the association was operated.

The Chicago & Indiana Coal Railroad division appears always to have been small. At the time Swartz became a member it consisted of but three members, Wright, Hildreth, and Swartz. Wright was the first local secretary, and after he left that road and went to another, Hildreth became local secretary and acted as such until Swartz was killed. The notices of the assessments upon which it is claimed that Swartz was delinquent, as well as all former ones, were all sent to Hildreth and delivered through him to Swartz, and he collected all former assessments and remitted them to the association, and did in fact collect the assessment for June, 1889, upon which Swartz was subsequently declared delinquent.

Article six of the by-laws of the association reads as follows:

"Any and all members of this association neglecting or refusing to pay any assessment for the period of thirty days from the date of such assessment, shall cease to be a mem-

ber, and the secretary shall strike his name from the roll of membership, and he shall only be re-admitted to membership upon the payment of all unpaid assessments and an additional fee of $2."

It is admitted that assessments for the months of June, July and· August, 1889, were made against Swartz, and notices thereof delivered, through Hildreth, the local secretary, to him in apt season, and that he did. not pay either of the two former within thirty days from their date, nor the latter within the first half of August during which he lived. It is also admitted that if at the expiration of thirty days from the dates of either of the assessments for June or July, the association had elected to terminate the membership of Swartz, "it might have done so, and the grand secretary might have stricken his name from the roll of membership.

On August 10th, Swartz paid to Hildreth, who gave his receipt therefor, as local secretary, the assessment of $2.50 for June, and asked him to wait until pay day, in the middle of the month, for the July and August assessments, and asked him to hold the $2.50 paid for June until that time, so that all might be remitted together.

Hildreth, being in arrears with his own, agreed to the suggestion.

Swartz was paid his wages on August 14th, but received his fatal injury later on that day, before paying any more to Hildreth. On August 16th, Hildreth wrote to the grand secretary as follows:

"Chicago & Eastern Illinois Railroad Company, ⎫
Brazil Station, August 16, 1889. ⎭

Mr. C. Huntington.

Dear Sir: I remit to you $10 on assessments Nos. 199, 201, 203. You will see that I have only remitted No. 199 for myself and S. S. Swartz. Now, I tell you the circumstances. I have been waiting for him. He gave me his dues for No. 199 August 10th, and as pay day was the 14th I told him we would remit the whole; but he got killed the afternoon of the 14th, just after he had drawn his money, so I have not got it. Will it debar him or his widow from

getting money on the policy ?    Please write me and let me
know.    I will send it to you as soon as I hear from you.

Respectfully yours,

W. E. HILDRETH."

A marginal note on the formal remittance sheet accom-
panying that letter, was made by a clerk of the association,
indicating that it was received on August 19th, and on that
day the $2.50 received for Swartz' June assessment was re-
turned to Hildreth, and on the same day, August 19th,
Swartz was entered on the roll of members, not as dead, but
as delinquent, as of July 1, 1889, for the June assessment.

It is shown by the evidence that Swartz was usually delin-
quent on assessments levied upon him.    Out of twenty as-
sessments levied upon him on and after June 1, 1888, he was
delinquent on seventeen by from eight days to one month
and nineteen days, and yet he was always recognized by the
association as a member in good .standing.    Subsequent
assessments, in every case, were made upon him, and subse-
quent payments received from him, and his name retained
upon the roll of membership, notwithstanding his delin-
quency.

It was not until after his death, and after he had paid
the assessment for June, that he was declared delinquent
for non-payment of that assessment.    It would seem as if
the fact was that his membership was forfeited because he
had died, and not because he was delinquent.

He was delinquent on the June assessment when the July
assessment was levied, and was again delinquent on the July
assessment when the August assessment was levied, and yet
such fact did not prompt the association to strike his name
from the roll, but on the contrary, it retained his name and
continued, by the levying of those assessments, to treat him
as a member in good standing.

Hildreth, also, was delinquent when he remitted his own
assessment along with that of Swartz for June, and yet Hil-
dreth's assessment, he being alive, was accepted and retained
while Swartz' assessment, he being dead, was rejected and
returned.

The conclusion, we think, is a fair and reasonable one, that, considering the circumstances, including the custom of the association with reference to Swarts' former delinquencies heretofore alluded to, the association waived its right to forfeit his membership under the by-law quoted, when, after the right to so treat him had accrued to the association, it continued to subject him to assessments.

If the association continued to treat Swarts as a member in good standing, after it had the right to not so treat him, what is more reasonable than that he should be considered as a member in good standing for all purposes?

If he were a member to respond to assessments, why was he not a member to share in benefits?

There is no pretense of fraudulent conduct or representation, or of mistake, or lack of notice or knowledge, in the case.

We think the evidence clearly shows that the association was in the habit of treating the by-law quoted, as waived, as to Swartz, and that it was waived up to the time of, and until after, his death. It is not pretended that Swartz ever had notice from the association that it would treat him any different with reference to the June and July assessments, from what it had treated him with reference to the preceding assessments paid and accepted after he was delinquent. And a waiver once made is operative until notice of its revocation is given.

Notwithstanding, under numerous authorities, by-laws with similar wording to the one under consideration, have been held to be self-executing and requiring no act of the association to put them into effect, still the authorities are controlling that a forfeiture under such a by-law may be waived.

In Metropolitan Accident Association v. Windover, 137 Ill., *supra*, at page 432, it is said by the learned justice who wrote the opinion:

"It can not be doubted that, while by the express terms of the defendant's by-laws, the consequence of a failure to pay an assessment within thirty days after notice, was a for-

·feiture of all claims the member might have against the defendant by reason of his certificate, the forfeiture thus provided for, was one which the defendant was at liberty to waive, and that such forfeiture, after once being waived, was incapable of assertion by the defendant. A forfeiture of this character is a matter of strict legal right, and the defendant in order to assert it, must abide inflexibly by the terms of its contract.    *    *    *

It follows that conduct on the part of the association inconsistent with an intention to abide by the strict terms of the contract and insist upon a forfeiture, if not amounting to a waiver, is, at least, evidence of a waiver.    *    *    *
By levying and collecting from him further assessments, the defendant treated him as still a member, and liable to the obligations, and consequently entitled to the benefits belonging to that relation."

In Stylow v. Wisconsin Odd Fellows Mut. L. Ins. Co., 69 Wis. 224, the court says:

"It is equally plain that, had payment been tendered the day before the death of the insured, such payment would have been accepted. The forfeiture, if any, arose upon the non-payment on or before the day fixed for payment, and it is clear from the evidence that the company did not consider it forfeited on that day; and it can not afterward declare it forfeited because of the happening of an event which has nothing to do with the payment of the sum due. That the company did not consider the policy forfeited on account of the non-payment of assessment No. 17, is very clear from the fact that they made assessment No. 19 against the deceased after No. 17 was past due.    *    *    *

Every time the company makes an assessment against the assured after he has failed to pay a previous assessment within the time prescribed by the rules, it waives the forfeiture of the policy for such failure, and admits him to be a member of the company, notwithstanding such failure."

In the last cited case, the by-law under which forfeiture of membership was claimed, was as follows:

"If any member fails to pay the secretary any assessment

made upon him within sixty days from the date of notice issued by the secretary, his membership shall cease, and he can only be reinstated upon the terms fixed by the by-laws."

And in that case there remained wholly unpaid at the death of the insured two assessments, one of which had been made and notice given, 106 days, and the other eighty days before the death of the insured.

Upon the trial it was in that case shown that nearly all assessments which had been paid by the insured were paid at dates ranging from eleven to 194 days after the expiration of the sixty days fixed by the by-law.

In the concluding part of the opinion the court further says:

" We are of opinion that after the constant course of the company with the assured, as shown by the evidence in this case, the only way the company could insist upon a forfeiture for non-payment within the time fixed by the by-laws would be by giving the assured personal notice that thereafter punctual payment would be required.   It can not, with any plausibility, be argued that in this case the company did not consider the deceased a member of the company up to the very time of his death, as the evidence shows that the assured was in his usual health up to the minute of his death."

There are many circumstances in that case, parallel with those in the case under consideration.

The case of Insurance Co. v. Norton, 96 U. S. 234, was one where the company had refused to pay the insurance on the ground that the policy was forfeited by reason of the non-payment of certain notes given for the last two premiums maturing before the death of the insured.

The provision in the policy was that if the premium or any premium note were not paid at maturity, the policy should " cease and be null and void without notice."

In commenting upon the effect of an agreement by the agent of the company to extend the time for the payment of premium notes after they had matured, the court, speaking through Mr. Justice Bradley, said:

"It is vain to contend that it (the company) gave them no authority to do this (give extensions), when it constantly allowed them (the agents) to exercise such authority, and always ratified their acts, notwithstanding the language of the written instruments."

And a recovery upon the policy was sustained.

Again, in Chicago Life Ins. Co. v. Warner, 80 Ill. 410, our Supreme Court said :

"If the practice of the company and its course of dealings with the insured, and others known to the insured has been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to set up such forfeiture, as against one in whom their conduct has induced such belief."

This doctrine is, also, laid down as the correct one in Hartford Life Ins. Co. v. Unsell, 144 U. S. 439; see also Sweetser v. Odd Fellows Association, 117 Ind. 97; Painter v. Industrial Life Association, 131 Ind. 68.

If in this case there was a waiver at all, it was in force up to the time of Swartz' death, and being then in force, the association could not, after death had intervened, deny to Swartz a standing at death which had been accorded to him up to the moment of death. His rights, and the rights of her who claims under him, were fixed by his death, and could not be altered by the *post mortem* action of the association, by its secretary, in marking up against him a forfeiture as of a day six weeks before.

Our conclusion is that the association, by its conduct with Swartz, waived the forfeiture provided by the by-law, and that he was a member in good standing at the time of his death, and that the judgment of the Circuit Court was right. It is therefore affirmed.