## WAIVER OF CONDITIONS BY A LIFE INSURANCE COMPANY.

Circuit Court of Cuyahoga County.

THE NEW YORK LIFE INSURANCE COMPANY v. HENRIETTA KAUFMAN.

Decided, December 7, 1903.

*Insurance—Condition as to Forfeiture for Non-Payment of Premium May be Waived.*

An insurance company may waive any of the conditions in its favor in a policy, including a provision that a failure to pay a premium when due shall work a forfeiture of the policy, and such waiver may be proven by proving a known custom of its agent to deliver its policies before receiving the first premium, although the policy contains a provision that only certain officers can extend time of payments.

*Garfield, Garfield & Howe,* for plaintiff in error.
*J. H. Sampliner,* contra.

MARVIN, J.; WINCH, J., and HALE, J., concur.

On the 8th day of January, 1900, Ignatz Kaufman gave his written application to the plaintiff in error for a policy of insurance upon his own life in the sum of $1,000 to be paid at his death to his wife, the defendant in error. A clause in this application reads:

"That the company shall incur no liability under this application until it has been received, approved, the policy issued thereon by the company, at the home office, and the premium has actually been paid to, and accepted by the company or its authorized agent during my lifetime and good health, except when the premium has been paid in advance to an authorized agent of the company, and a binding receipt on the company's authorized form has been given by such agent, the liability of the company shall be as stated in such binding receipt."

The agent of the company through whom this application was made was Max Stearn. He was an insurance solicitor acting for this company, soliciting and taking applications for policies,

delivering them to the branch office of the company here, from which they were sent to the home office in New York, and, when accepted, the policies were sent back to the branch office here, and from such branch office were delivered to him and by him delivered to the assured and the premiums collected.

This application was delivered by Stearn to the branch office, forwarded to and accepted by the company, and a policy issued bearing date of January 12th, 1900. This policy was forwarded by the company to the office in Cleveland where the application was made out, and Kaufman and Stearn both lived, on the 14th day of January, 1900, and was given to Stearn for delivery to Kaufman. Stearn took the policy to the place of business of Kaufman, found him busy and laid the policy on his desk, calling his attention to it. Nothing was said by either Stearn or Kaufman at this time about the payment of any premium and nothing was actually paid.

On the 23d day of January, 1900, Kaufman died, not having paid any part of the premium, and never having been asked to make any payment. Among other provisions of the policy, is the following:

"Only the president, a vice-president, the actuary or the secretary has power in behalf of the company to make or modify this or any contract of insurance or to extend the time for paying the premium, and the company shall not be bound by any promise or representation heretofore or hereafter given by any person other than the above."

The policy contained also the following clause:

"This agreement is made in consideration of the sum of forty-eight dollars and forty-eight cents ($48.48), the receipt of which is hereby acknowledged, and of the payment of thirty-seven dollars and ninety-eight cents ($37.98) on the 8th day of January, 1901, and of the payment of a like sum on the 8th day of January of every year thereafter during the continuance of this policy."

Upon the death of Kaufman, proper notices were sent and proofs made out and filed, and demand made for payment of the one thousand dollars. This was refused, whereupon the defendant in error brought suit against the company and recov-

ered a judgment for said sum.  The purpose of the present pro-
ceeding on the part of the insurance company is to obtain a re-
versal of such judgment.

The claim made on the part of the plaintiff in error is, that
the policy never took effect because no premium was ever paid.
It relies upon the language of the application hereinbefore
quoted.  Of course, if the payment of the first premium was a
condition precedent to the taking of the insurance, then the
policy was not binding, unless such condition was waived.  It is
said that because of the language of the policy, first hereinbe-
fore quoted, there was clearly no waiver by any person author-
ized to make such a waiver; the language being that,

"Only the president, a vice-president, the actuary, or the sec-
retary has power in behalf of the company  *   *   *   to ex-
tend the time for paying any premium, and the company shall
not be bound by any promise or representation heretofore or
hereafter given by any person other than the above."

If there was any waiver here is it evidenced by the fact that
Stearn, the agent of the company delivered the policy to Kauf-
man without asking for any payment; and that Stearn, who had
been the agent of the company for more than twenty years, fre-
quently delivered policies in this way without receiving the
first premium at the time of delivery.  It appears from the evi-
dence that the company had a form of receipt which it took
from persons to whom policies were delivered, and who did not
pay the premium at the time of such delivery—this receipt
showing that the policy was held for examination only.  No such
receipt was given in this case, nor was it asked for.  It is clear
that Stearn understood that the policy was in force from the
time of its delivery, and that he had simply extended credit to
Kaufman.

As has already been said, the testimony of Stearn shows that
it was common practice for him to deliver policies without
the cash premium being actually paid at the time of delivery;
that this was known to Mr. Taylor, who was the manager of the
company's business in this city, appears from his own testi-
mony.  It seems to have been the practice of the company to
make out invoices of policies sent or put into the hands of the

several agents of the company, the agent being charged with the premiums. The rules of the company required that upon the delivery of a policy, either a receipt showing that the policy was taken for examination only should be taken, or the premium should be paid in cash. It is clear, however, that his rule was not uniformly enforced, and that such fact was known to Mr. Taylor, the manager of the Cleveland branch of the business. That a provision in the policy to the effect that no waiver can be made by the agent, may itself be waived, is held in numerous cases.

In the case of *Knickerbocker Life Insurance Company* v. *Phoebe A. Norton*, 96 U. S., 234, this language is used in the syllabus:

"An insurance company may waive any condition of the policy inserted therein for its benefit.

"As the company may at any time at its option give authority to its agents to make arrangements or to waive forfeitures, it is not bound to act upon declaration of its policy that they have no such authority * * * as denoting the power given by an insurance company to a local agent, evidence is admissible as to its practice in allowing him to extend the time for the payment of premiums and premium notes; and the jury upon such evidence may find whether he was authorized to make such an extension, and, if so, whether it was in fact made in the case on trial."

In the policy under consideration in that case, this provision appears:

"If the said premium shall not be paid on or before twelve o'clock noon on the day or days above mentioned for the payment thereof, at the office of the company in the city of New York (unless otherwise expressly agreed in writing) or to agents, when they produce receipts signed by the president or secretary, or if the principal of, or interest upon said policy shall not be paid at the time and the same shall become due and payable, then, and in every such case, the company shall not be liable to pay the sums assured, or any part thereof."

By an indorsement on the policy, it was declared that:

"Agents of the company are not authorized to make, alter or abrogate contracts or waive forfeitures."

The facts in this case were, that the assured, after paying various premiums, failed to pay in full the premium due on the 20th of April, 1875, but paid in cash, and gave for the balance, to-wit, $335, his two promissory notes, one due on the 20th of June, and the other on the 20th of July, 1875; each note contained a clause, declaring that if it was not paid at maturity, the policy would be void. The first note was not paid at maturity, but the claim was made that the agent of the company extended the time for payment of such note. The authority of the agent making such extension was denied, and the language of the policy itself, including the indorsement hereinbefore quoted, was relied upon as conclusively showing that the agent had no such authority. In the opinion, page 240, Mr. Justice Bradley calls attention to the provisions of the policy hereinbefore quoted, and then says:

"And these terms, had the company so chosen, could have been insisted on. But a party always has the option to waive a condition or stipulation made in his own favor. The company was not bound to insist upon a forfeiture, though incurred, but might waive it."

Without quoting further from this case, we regard it as an authority in point on the question under consideration.

In the case of *Insurance Company* v. *Florence Oliver*, 22 Texas Civil Appeals, 8, this language is used in the syllabus:

"Where a policy of life insurance provides that it shall not go into effect until the first premium has been paid in cash by the assured, and that no agent of the company has powers to waive this requirement, and it is shown that the local agent had frequently and for several years taken notes for the first premium, and that this practice was known to the company's general agent, and no disapproval thereof was shown, such waiver will be binding on the company."

In the case of *Berliner* v. *The Insurance Company*, 121 Cal., 451, this language is used in the syllabus:

"The general agent of a life insurance company may waive the payment of the first premium and deliver the policy and thereby make it a valid and substituting contract of insurance, notwithstanding the provision in the policy that it shall not

take effect until the first premium is paid while the insured is in good health   *   *   *   the possession of the policy by the insured or by the beneficiary is *prima facie* evidence of its delivery as a valid and subsisting contract, and the burden of overcoming the *prima facie* case made by the production of the policy by the plaintiff in an action to enforce it.''

Attention has already been called to the fact that the policy itself acknowledged the receipt by the company of the first premium. This acknowledgment, it is conceded, is not binding upon the company, but is subject to be explained or denied; and to this extent the company itself denies the language used in the policy.

It would seem a great wrong to permit the company to be relieved from liability, if what was done by the agent was the customary method of transacting this business, and if the policy was delivered by Stearn to Kaufman under such circumstances that Kaufman had the right to understand that a temporary credit was given to him. As a matter of fact, it is probable that he never read the clause in the policy providing that none but the officers named in the clause could make or modify any provision contained therein, and that he never read the receipt for the first premium contained in the policy. But, however, this may be, we hold that it was proper to submit to the jury the question of whether there was a waiver as to the advance payment of the premium. This question was properly submitted to the jury. The charge properly stated the law applicable to the case.

Attention is called to the case of *MacDonald* v. *The Provident Savings and Life Assurance Society*, 108 Wis., 213. In this case a note was given for the first premium, and the payment of the same extended from time to time. Both in the application and in the policy it is provided that the policy shall not take effect until the first premium is actually paid. There was no acknowledgment in the policy of the receipt of the first payment. The agent had such receipt in his hands at the time he delivered the policy. He had taken a note from the assured when the application was made and when the policy was delivered, the note not being paid the agent retained the receipt.

The assured gave as a reason why he did not then pay the note, that he did not know that his wife would be satisfied with the policy. On this state of facts it was *held* that there was no waiver, but this is clearly distinguishable from the facts as above recited from the case now under consideration.

The case of *The Union Central Life Insurance Company* v. *Hook,* 62 Ohio State, 256, differs materially from the present case. In that case the policy had been in the hands of the assured for nine years, when, it is claimed, the agent agreed to an alteration in its terms as to the payment of the tenth premium. At the trial, the plaintiff was permitted to introduce evidence as to conversations had with the agent prior to the time the policy was issued. This admission of evidence was held to be erroneous. Evidence was further permitted as to conversations between the agent and the assured nine years after the policy was issued, by which it was sought to change the terms of the policy. The admission of this evidence was held to be erroneous, and the court in its opinon lays stress upon the fact that the policy had been so long in the possession of the assured that he must have known its terms, using this language on page 363:

"Under such circumstances the presumption is conclusive, in the absence of fraud and mistake, that he knew the contents of the instrument."

On page 265, this language is used in the opinion:

"We do not decide that there might not be estoppel by conduct, notwithstanding such an agreement, but that case does not arise here."

Neither this nor the case of *Travellers' Insurance Company* v. *Myers,* 62 Ohio State, 259, seem to us to be in conflict with the view of this case taken by the trial court and we hold that no error is shown by the record to have been committed by the trial court, and the judgment is affirmed.