## DARGAN v. EQUITABLE LIFE ASSURANCE SOCIETY.

1. INSURANCE—WAIVER.—Receipt of policy by local agent, holding it at request of insured while in good health, the non-payment of premium not being cause of detention, as that had been proffered to be arranged, tender of premium after illness and again after death, are facts from which the jury might infer waiver of condition in application, "that this contract shall not take effect until first premium has been paid in my good health."

2. CHARGE.—From the context the word "issued," used in charge in reference to the policy, held not to mean "issued," in its technical sense, which was an issue in the case, but in sense of preparing and signing policy for delivery.

Before WATTS, J., Florence, October, 1903. Affirmed.

Action by Ella C. Dargan against Equitable Life Assurance Society of the United States. From judgment for plaintiff, defendant appeals.

Mr. J. P. K. Bryan, for appellant, cites: 54 S. C., 371; 58 S. C., 201; 52 S. C., 224; 51 S. C., 186; 63 S. C., 197.

Messrs. Willcox & Willcox, contra, cite: Aug. on Life Ins., sec. 420; 1 Beach on Ins., sec. 500, 504; 16 Wall., 203; 102 U. S., 108; 96 U. S., 234; 95 U. S., 843; 58 S. C., 201; 63 S. C., 192.

April 13, 1905. The opinion of the Court was delivered by

MR. JUSTICE JONES. The appeal in this case is from a verdict and judgment for plaintiff in an action on a policy of insurance on the life of Walter Dargan, payable to plaintiff, his wife, in the sum of $1,500. The exceptions allege error in the refusal of motion for nonsuit, in the refusal to direct a verdict, and in certain portions of the charge to the jury, all of which, except the fifth exception, to which reference will be made later, hinge upon the question whether there was any testimony tending to support plaintiff's action.

The main issue raised by the answer was that no contract of insurance was ever delivered to Walter Dargan, that the application for insurance contained the following clause:

"I hereby agree that this application and the policy hereby applied for, taken together, shall constitute the entire contract between the parties hereto, * * * that this contract shall not take effect until the first premium has been paid during my good health;" that Walter Dargan did not, while in good health, pay the first premium on said policy applied for, but soon after said application, fell sick and died on the 10th day of July, 1901, without having paid the first premium and without a delivery to him of any policy by defendant.

The testimony was to the effect that on the 20th day of June, 1901, Walter Dargan, then in good health, made application in writing to the defendant company for a policy of insurance, which application contained the stipulation above quoted. The local agent of the defendant company, who toook the application, was Mr. John J. Dargan, an uncle of Walter Dargan. The applicant passed the physician's examination and the application was forwarded to defendant's home office on June 24, 1901. A policy, No. 1054307, was written and forwarded to the State agent and received by him at Rock Hill, S. C., on July 2d, 1901; it was forwarded to the local agent for delivery, and he, on receipt of it, at once wrote to Walter Dargan that he had the policy and was ready to deliver it. The local agent testified that he did not mail the policy to Walter Dargan when he received it; because Walter Dargan told him to keep it when it came. We quote from the testimony of Mr. John J. Dargan: "Q. Did you fail to deliver the ordinary life policy, for which he had applied, immediately upon its receipt for the reason that he had not paid the premium? A. No; that had nothing to do with it. I mean his failure to pay the premium was not standing in the way of my delivering it. Q. The failure to pay the premium did not cause you to hold up? A. I would have sent him the policy,

as I had arranged with him to pay it myself, if necessary. Q. Isn't it a fact that the reason you held up this policy was that you wanted to see him and persuade him to take the other policy? A. No, sir; I did not send it because he was sick. Q. But I mean when you first received it? A. No; he told me to keep it. He told me to keep the policy when it came."

The testimony tended to show that when the local agent received the policy for delivery and notified Walter Dargan of that fact, Dargan was in good health. The testimony further was to the effect that Walter Dargan became sick on the 6th or 7th of July, 1901, and died on the 10th of July, 1901. While Walter Dargan was sick, George E. Dargan, on his behalf, applied to the local agent for the policy and offered to pay the premium, but because of Walter Dargan's illness, the local agent declined to deliver up the policy or to receive the premium. Two days after the death of Walter Dargan, his father made tender of the premium and demanded the policy, which was refused. The policy was returned to the home office as "not taken out," and was cancelled The testimony further shows that when the application was made for the policy, Walter Dargan was urged by John J. Dargan and W. H. Gibbes to close up the transaction by note or due bill, so as to make the insurance binding from the date of the application, but he declined to do so, stating that he would make settlement later when the insurance arrived. We quote further from the testimony of John J. Dargan as follows: "Q. Isn't it true that Mr. Walter Dargan was taken sick before any one offered to pay the premimum on his behalf? A. There never was a question about paying his premium; I kept offering that that would be arranged. When he applied for insurance, I told him to arrange the premium. Q. Had he not declined previously your offer? A. He did that day decline it. Q. No offer on your part to pay the premium for him or advance the premium had been accepted by Mr. Walter Dargan? A. That is right."

This Court, no matter what view it may entertain as to the force and sufficiency of the testimony, is powerless to interfere with the action of the Circuit Court in refusing to direct a nonsuit or a verdict, if there be any testimony whatever tending to support the plaintiff's cause of action. The fact that the policy never went into the. manual possession of Walter Dargan is not fatal. If John J. Dargan, the local agent, after receiving it for delivery, retained.the custody of it for Walter Dargan by his request or direction, that was some evidence to go to the jury on the question of delivery. *Young* v. *Insurance Co.,* 68 S. C., 391, 47 S. E., 681. Notwithstanding an express provision in a policy of insurance that the company shall not be liable on the policy until the premium be actually paid, a delivery of the policy, as a completed contract, under an express or implied agreement that a credit shall be given for the premium, is a waiver of the stipulation, and in such case the company is liable for a loss that may occur during the period of the credit. *Farnum* v. *Phoenix Insurance Company,* 83 Cal., 246, 17 Am. St. Rep., 238; *Boehen* v. *Williamsburg City Insurance Co.,* 35 N. Y., 131, 90 Am. Decision, 787; *Bodine* v. *Exchange Fire Insurance Co.,* 51 N. Y., 117, 10 Am. Rep., 566; *Knickerbocker Insurance Co.* v. *Norton,* 96 U. S., 234. The reason for the rule is that a delivery of the policy, as a valid contract, is wholly inconsistent with the assertion of non-performance of conditions precedent to defeat it. The same principle was enforced in *Gandy* v. *Insurance Co.,* 52 S. C., 228, 29 S. E., 655. As insurance agents should not, and as a rule do not, deliver over policies without payment of the premiums unless they intend to give credit, the mere fact of a delivery without demand of the premium raises a presumption that credit is intended. The evidence tends to show that the defendant's agents were willing to extend credit to the insured, since, at the time of the application, they were willing to accept the due bill of the insured for a binding receipt, and, as already stated, the local agent, John J. Dargan, testified that the non-payment of the premium had

nothing to do with the fact that he did not mail the policy to the insured as soon as it was received from the home office, as he had arranged with the insured to pay the premium himself, if necessary. If, therefore, the agent of the defendant, after notifying the insured that he had the policy for delivery, received instructions from the insured to hold the policy for the insured, and so held the policy, there was evidence of a. constructive delivery of the policy to the insured while in good health.

The appellant argues that it is not a legitimate inference from the evidence that the local agent held the policy for the insured, but that the true inference is that he held it for the company. That, however, was a question for the jury. If there was a constructive delivery upon credit for the premium at any moment before the insured became in bad health, the subsequent illness of the insured could not change the status or defeat a recovery upon the policy, certainly if the insured died within the period of the probable credit. As a delivery of the policy upon a credit for the premium has the same legal effect as a delivery upon cash payment of premium, even if there was a constructive delivery of the policy upon credit while the insured was in bad health, the case of *Hollings* v. *Bankers Union,* 63 S. C., 192, 197, 41 S. E., 90, is authority for right of recovery upon the policy. In that case, Mr. Justice Gary, speaking for the Court, said: "If the defendant knew at the time it accepted a premium of insurance and delivered the policy that E. B. Hollings was sick, there is but one inference of which this fact is susceptible, and that is that the defendant waived the right to insist upon this objection, otherwise it would be allowed to take advantage of its own wrong."

As in our view, there was some testimony tending to show a constructive delivery of the policy while the insured was in good health upon a credit for the premium, and that there was a tender of the premium within a few days thereafter in the lifetime of the insured, the case was properly submitted to the jury. This conclusion makes it also necessary to

overrule all exceptions to the charge with reference to the delivery of the policy and the question of waiver, based upon the sole ground that the charge was erroneous, because there was no evidence whatever as to these matters.

The fifth exception requires but a brief reference thereto. The Circuit Judge charged the jury: "The company admits that Mr. Dargan did apply for a policy and that they issued a policy, but that they never delivered it to him, by reason of the fact that Mr. Dargan did not comply with the terms and conditions in his application." The exception complains that the Court charged that the policy was *issued;* whereas, that was the very point in controversy. But it is manifest, from the language used, that the Court did not use the word "issued" in its full technical sense, which includes delivery, but in the sense of preparing and signing the policy for delivery, because he further explained that the company claimed that the policy was never delivered.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE WOODS *did not sit in this case because disqualified.*