## Weinstein, Trustee, v. Globe Indemnity Co., Appellant.

*Insurance—Theft insurance—Provision as to keeping books.*

1. A policy of insurance covers only such injury as has been provided for, and if limitations on the right of reimbursement are imposed, where loss occurs, compliance with which is necessary before recovery can be had, they are controlling.

2. A stipulation in a policy of theft insurance that the company shall not be liable "unless books and accounts are regularly kept," so that the exact loss may be determined, is a proper one, and will be enforced.

3. Where the insured kept no daybook, journal, sales or purchase record, or ledger, and his bank and check book, bills and an inventory were shown to be inaccurate, no recovery can be had under the terms of a policy providing that books must be kept by the insured.

Argued May 20, 1923. Appeal, No. 270, Jan. T., 1923, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1921, No. 5539, on verdict for plaintiff, in case of Jacob I. Weinstein, Trustee in bankruptcy for estate of Louis Hultzman, trading as Hultzman's Fur Shop v.

Globe Indemnity Co.   Before WALLING, SIMPSON, KEP-
HART, SADLER and SCHAFFER, JJ.   Reversed.

Assumpsit on a policy of insurance for theft.   Before
SHOEMAKER, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $5,129.30.   De-
fendant appealed.

*Error assigned,* inter alia, was (4) refusal of defend-
ant's motion for judgment n. o. v., quoting record.

*Robert T. McCracken,* for appellant, cited: Seibel v.
Ins. Co., 197 Pa. 106; Polizzi v. Ins. Co., 255 Pa. 297.

*Harry L. Jenkins,* with him *W. S. Furst,* for appellee,
cited: Polizzi v. Ins. Co., 255 Pa. 297.

OPINION BY MR. JUSTICE SADLER, May 7, 1923:

The plaintiff is the trustee in bankruptcy of one Hultz-
man, who conducted a store in Philadelphia containing
a stock of furs, largely made into finished garments.  The
merchandise was insured by the Globe Indemnity Com-
pany against theft, and, in the policy issued, it was
provided in part, by section 5, as follows: "The company
shall not be liable for any loss or damage......unless
books and accounts are regularly kept by the assured
in such manner that the exact amount of loss may be
accurately determined therefrom by the company."  On
December 29, 1920, burglars entered the establishment,
and removed a part of the contents.  A claim for the
value thereof was made, which the defendant refused to
pay, on the ground that no satisfactory evidence ap-
peared as to the property actually taken, and, on suit
brought, rested its defense on the portion of the contract
above quoted.  It was insisted no sufficient proof of com-
pliance with the condition appeared, and, as a result,
binding instructions in its favor should have been given.

A request to this effect was refused by the court below, and a motion for judgment n. o. v. was overruled; hence this appeal.

The problem presented rests for solution not so much on questions of law, as on those of fact. When parties enter into a written agreement defining their respective liabilities, as here,—and all who sign are presumably acquainted with the matters included therein,—its terms and conditions will be enforced. A policy of insurance covers only such injury as has been provided for, and if limitations on the right to reimbursement, where loss occurs, are imposed, compliance with which is necessary before recovery can be had, they are, of course, controlling. There is nothing improper in requiring that books be kept, so that the extent of damage may be discovered. On the contrary, such a stipulation is required to prevent fraud, which may, from time to time, be attempted, though in this case no evidence to prove any wrongful conduct by the insured appeared.

The testimony of Hultzman was depended upon to make out plaintiff's case. It showed that an inventory of stock on hand had been made in January of 1920, some three months prior to the issuance of the policy, and again on December 22d, of the same year, seven days before the burglary. The witness kept no daybook, journal, sales or purchase record, or ledger of any sort. His bank and check book, offered in evidence, were unreliable, in view of his declaration that all receipts from sales did not appear therein, and transactions not connected with the business were entered. The inventory, as finally exhibited, supposedly represented the goods on hand, when made, but failed to indicate changes due to subsequent sales, except by lead pencil annotations showing the addition, after certain entries, of the word "sold." In some cases, Hultzman "would mark the property disposed of from the inventory, or make a memorandum probably on another piece of paper." Further, the bills for certain purchases of skins were offered, but when it is remembered

many of them had been used in the manufacture of the finished pieces, for the loss of which the claim was made, the proof was far from satisfactory. A demand for presentation of other records was not complied with, as they were not in existence; had there been, and the request for production refused, this would have been fatal to a recovery: Seibel v. Lebanon Mut. Ins. Co., 197 Pa. 106. Though a statement was prepared by adjusters employed by Hultzman, the result of their efforts was necessarily speculative, as the data which formed the basis of their report was only such as above stated.

There can be no doubt of the meaning of the words used in the policy. It was the duty of the insured to keep "books and accounts," so that, in case of theft, the exact loss could be ascertained "therefrom," and unless this was done, or a substantial compliance with the requirement appeared, a verdict for plaintiff was not justified: Harris v. General Accident F. & L. Assn. Co., 187 N. Y. Supp. 291; Home Ins. Co. v. Williams, 237 Fed. 171. We see nothing in Polizzi v. Commercial Ins. Co., 255 Pa. 297,—where evidence showed the time fixed for the making of the inventory had not elapsed when the injury was inflicted,—which is in contradiction of this conclusion. It is true no particular form of books is required to be kept (26 C. J. 253); the stipulation must be given a reasonable interpretation, and is complied with when the data can be produced which shows the real state of facts, but there must be sufficient written evidence to enable the company to determine with accuracy the amount of its liability. In the present case, it was left to the jury to say whether the requirement was met by the production of the inventory and bills, as already described, but we are of opinion the plaintiff failed in this respect, and the insurer, as a result, was not under obligation to pay. There is no evidence of any waiver of the condition, and it was therefore justified, under the express terms of its contract, in refusing to recognize the claim, when not furnished with the written memoranda

which would lay the foundation for a proper investigation. Admittedly, there were no records, except the inventory of December 22d, with the bills, and, combining the two, no accurate checking of the claim was possible. The policy provided for this very contingency, and the clause inserted therein cannot be disregarded, though the insured may have suffered some loss.

The proof offered was not enough in law to uphold any judgment for plaintiff, and binding instructions should have been given as requested by defendant. As the testimony shows it impossible for the insured to produce additional records, the grant of a new trial would be useless. The fourth assignment of error must be sustained.

The judgment is reversed, and is here entered for defendant.