## COHEN v. GLOBE INDEMNITY CO.
### No. 20218.

District Court, E. D. Pennsylvania.
March 18, 1938.

T. Henry Walnut, of Philadelphia, Pa., for plaintiff.

Axelroth & Porteous, by Harry Axelroth, of Philadelphia, Pa., for defendant.

MARIS, District Judge.

This was a suit by the plaintiff upon two policies of burglary insurance issued by the defendant on March 13, 1936. One was in the sum of $1,000 covering merchandise outside the safe in plaintiff's establishment and the other in the sum of $4,000 covering merchandise contained in the safe. The evidence indicated that the plaintiff, who was a retail jeweler having his place of business at 500 Market street in the city of Philadelphia, suffered a loss by burglary at some time between Saturday evening, June 19, 1937, and the following Monday morning. At some unknown time during that

period his store, which occupied the ground floor, was entered from the second floor through a hole cut in the ceiling, his safe was broken into, and a large quantity of merchandise, both within the safe and outside it, was stolen.

The defendant did not seriously question that the plaintiff suffered a loss within the terms of the policies, nor was any question raised as to the value of the goods claimed to have been stolen. Its defense was that the plaintiff had not kept books and accounts as required by the conditions of the policies from which it could determine the amount of the loss and that the plaintiff was, therefore, not entitled to recover. The jury rendered a verdict for the full amount of both policies, with interest, subject to the defendant's point for binding instructions which I reserved.

■ The defendant moved to have the evidence certified and filed so as to become part of the record and for judgment n. o. v. upon the point reserved. It has failed, however, to provide me with a transcript, suitable for certification, of all the evidence taken upon the trial. Its motion must therefore be refused. Deemer v. United Fruit Co., D.C., 17 F.Supp. 146. It has also moved for a new trial. This motion raises the same questions which were sought to be raised on the other. They arise out of the following provisions of paragraph E of the conditions of the policies: "E. The Company shall not be liable for loss or damage * * * (2) unless books and accounts are regularly kept by the Insured and are kept in such manner that the exact amount of loss can be accurately determined therefrom by the Company; * * *"

■ The first question raised by the motion is whether I erred in leaving it to the jury to determine whether the books and records offered in evidence by the plaintiff complied with the terms of this clause. These books and records consisted primarily of a perpetual inventory in loose card form. Each card related to a specific item of merchandise in plaintiff's stock, and contained a description of the item, its cost, and its stock number. In addition all of the cards made up after 1933, except those representing merchandise purchased over the counter, contained a notation of the date of purchase of the item and the name of the person from whom purchased. The perpetual inventory in question was kept up by the plaintiff's wife, who was active in his business. She started it prior to 1933. The prior records from which she made it up did not disclose the dates of purchase or names of the persons from whom purchased; consequently this information did not appear on the cards relating to merchandise purchased prior to 1933. The plaintiff, however, produced in addition to the perpetual inventory a sales book showing sales made from 1933 to date, a ledger showing accounts payable and paid, and a large number of invoices showing the purchase of many of the articles contained in the perpetual inventory. He also produced physical inventories taken in 1935, 1936, and 1937. It was testified that in preparing these physical inventories each article in stock was checked against the perpetual inventory card.

The defendant argues that I erred in not ruling as a matter of law that these records did not meet the policy requirements. Two reasons for such a ruling are assigned. In the first place, it is urged that the perpetual inventory was inaccurate and a number of instances of alleged inaccuracy were pointed out. These were, however, comparatively few and the plaintiff offered evidence tending to explain them. The accuracy of the records was, therefore, clearly for the jury. It is argued further, however, that since none of the early inventory cards showed the date of purchase or the name of the person from whom purchased, the books were not kept in such manner as to permit an accurate determination of the loss and consequently they could not support the plaintiff's claim. Doubtless this information would be most helpful in checking the accuracy of the perpetual inventory. It may well be, however, that the three annual physical inventories which the plaintiff offered supplied an equivalent check on the perpetual inventory.

■ It is well settled that a policy condition of the kind here involved must be given a reasonable interpretation and is satisfied if the books and records produced are sufficient to show the real state of facts and to enable the company to determine with reasonable accuracy the amount of its liability. Absolute accuracy is not required. Weinstein v. Globe Indemnity Co., 277 Pa. 388, 121 A. 316; Gorson v. Aetna Accident & Liab. Co., 283 Pa. 558, 129 A. 590. "It is not necessary that the books should be kept according to any particular system, nor that they should be such a scientific system of books as would satisfy

an expert accountant in a large business house in a city." Lumbermen's Mut. Ins. Co. v. Johnson Lumber Co., 5 Cir., 53 F. 2d 940, 941. Under the facts of this case the sufficiency of the plaintiff's books and accounts was clearly for the jury.

The plaintiff contended at the trial that even if the earlier perpetual inventory cards were insufficient to comply strictly with the terms of the policy because they did not contain the date of purchase or name of the person from whom purchased, the defendant was estopped in equity from objecting to them on this ground because of the fact that it had in the case of a prior burglary loss examined and approved these very records and paid the loss, and consequently knew of their condition when it issued the policies in suit and accepted the premiums thereon. Over the objection of the defendant, I permitted the introduction of evidence in rebuttal tending to establish these facts. This evidence indicated that on October 25, 1935, the plaintiff's store window had been broken into and certain merchandise stolen. At that time he was carrying a burglary insurance policy with the defendant having substantially the same provisions as the policies in suit. Following the burglary the assistant claims manager of the defendant came to his place of business, examined the perpetual inventory cards, including all the early cards, and other records and prepared a proof of claim which the plaintiff executed, and the defendant then paid the amount of the loss. The plaintiff's witnesses testified that the defendant's representative was asked whether he cared to make any recommendation for the improvement of the system and he expressed himself as thoroughly satisfied with the manner in which the records were kept. Several months later the defendant issued the policies in suit and accepted the premiums thereon paid by the plaintiff.

█ The defendant strongly urges that my admission of this evidence was error which compels a new trial. After careful consideration, however, I am satisfied that it was not error to admit it. As we have seen, a substantial compliance with the policy provision for the keeping of records is sufficient. It is well settled that the courts do not favor forfeitures and where, as here, the insurer places its stamp of approval upon the books and accounts kept by the insured and with knowledge of their character issues the policies in suit, it is estopped thereafter from setting up as a ground of forfeiture that the prior records do not comply with the policy requirements. Knickerbocker Life Ins. Co. v. Norton, 96 U.S. 234, 24 L.Ed. 689; New York Life Insurance Co. v. Eggleston, 96 U.S. 572, 577, 24 L.Ed. 841; Hartford Life & Annuity Ins. Co. v. Unsell, 144 U.S. 439, 12 S.Ct. 671, 36 L.Ed. 496; Mutual Reserve Fund L. Ass'n v. Cleveland Woolen Mills, 6 Cir., 82 F. 508; Twin City Fire Ins. Co. v. Stockmen's Nat. Bank, 9 Cir., 261 F. 470; New York Life Ins. Co. v. Dumler, 5 Cir., 282 F. 969.

█ In this connection the following language of Mr. Justice Bradley in New York Life Insurance Co. v. Eggleston, supra, is peculiarly appropriate: "We have recently, in the case of [Knickerbocker Life] Insurance Company v. Norton (supra, [96 U.S.] p. 234 [24 L.Ed. 689]), shown that forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture. The representations, declarations, or acts of an agent, contrary to the terms of the policy, of course will not be sufficient, unless sanctioned by the company itself. [Union Mut. Life] Insurance Company v. Mowry, supra, [96 U.S.] p. 544 [24 L.Ed. 674]. But where the latter has, by its course of action, ratified such declarations, representations, or acts, the case is very different."

█ In the present case the evidence tended to establish that not only was the action of the defendant's representative in connection with the prior loss such as to lead the plaintiff to believe that his books and records complied with the provisions of the policies, but that the defendant by paying that loss had sanctioned these representations. I instructed the jury that they would be justified, if they believed the plaintiff's evidence, in finding that the defendant was estopped from objecting to the sufficiency of the early inventory cards. The

556

jury were further instructed from all the evidence to determine whether the plaintiff's books and accounts did comply substantially with the terms of the policy, whether they were properly kept up and whether they reflected with substantial accuracy the condition of affairs at the time the burglary took place. After full consideration I am satisfied that these questions were properly submitted to the jury. By their verdict they resolved them in favor of the plaintiff. This is a finding of the material facts which concludes the controversy.

Northern Assurance Co. v. Grand View Building Association, 183 U.S. 308, 22 S.Ct. 133, 46 L.Ed. 213, and Satz v. Massachusetts Bonding & Ins. Co., 243 N.Y. 385, 153 N.E. 844, 59 A.L.R. 606, cited by the defendant, are not in point. They hold that an insurance company is not estopped from setting up the breach of a warranty of an existing fact contained in a policy even though the company, through its agent, knew of the true fact at the time the policy was issued. They do not hold that an insurance company may by word and deed indicate to its insured that his performance of a promissory warranty to keep books and accounts is satisfactory, and afterward, in an action brought against it on a later policy containing the same warranty set up that the very records previously approved do not comply with the requirements of the policy. This is not a case of varying the terms of a written contract by parol evidence. It is rather a case of permitting a party to a contract to show performance to the satisfaction of the other party.

The defendant's motions for judgment n. o. v. on the point of law reserved and for a new trial are refused.