Price, Appellant, *v.* Century Indemnity Company.

Argued January 4, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Arthur S. Arnold,* with him *Alma H. Arnold,* for appellant.

*Harry S. Ambler, Jr.,* for appellee.

OPINION BY MR. JUSTICE STERN, March 22, 1939:
This is a suit on a "hold-up" insurance policy. Plaintiff is an itinerant jewelry merchant. He claims that

while traveling alone in an automobile with his merchandise he was forced off the road by three persons and a part of his stock in trade was taken from him.

Defendant company offered four defenses to the action: first, that the robbery did not occur, second, that at least it was not established by "reasonable evidence" as required by the policy, third, that, in violation of the policy, plaintiff was not accompanied by a guard, and fourth, that plaintiff did not keep books in such manner that the company could determine therefrom the amount of loss, which was one of the conditions specified in the policy.

Plaintiff, who is appealing from a judgment entered on a verdict in favor of defendant, does not claim that there was error in the manner in which the first two of the defenses were submitted to the jury. As to these it may be said parenthetically that his testimony concerning the happening of the robbery was not corroborated by a single other witness or circumstance, and there were features of his story which cast such suspicion upon its credibility that the verdict can scarcely be regarded as surprising.

The policy contains certain items called "declarations" and states that they "are declared by the Assured to be true," and that "This policy is issued in consideration of such statements and the payment of the total premium in the Declarations expressed." One of these "declarations" is as follows: "The following conditions exist at all times while the property is being conveyed: . . . (a) The number of guards accompanying the custodian is One." No written or signed application having been made by plaintiff, it is his contention that he was not bound by this "declaration" in the policy, that he did not know it was contained therein, that he was not legally required to read the policy, that his broker had informed the company that a guard accompanied plaintiff only occasionally, that at best the "declaration" was merely as to a then existing fact and did not con-

stitute a promissory warranty that he would continue to be accompanied by a guard throughout the term of the policy. The court submitted to the jury the question whether defendant had received from the broker the explanatory information about the guard as alleged by plaintiff and denied by defendant, and also whether plaintiff knew that the "declaration" was contained in the policy, the jury being properly instructed that plaintiff was not bound thereby unless it was inserted with his knowledge or was subsequently brought to his notice. In that connection the court was justified in permitting the introduction into evidence of two similar policies which had been issued to plaintiff in preceding years, each containing this same "declaration," as tending to show the likelihood of its having come to his attention; plaintiff himself had referred to these policies in his pleadings.

Even if this "declaration" was found to be binding upon him, plaintiff takes the further position that it imposed no obligation to *continue* the maintenance of a guard. It is true there are authorities construing various types of statements in insurance policies as mere representations which cannot be taken advantage of by the company unless fraudulently made by the insured,[1] but, on the other hand, a declaration factual in form may be contractual in essence and in legal effect, as some of the items listed in this policy under the heading of "Declarations" undoubtedly are.[2] The words: "The following conditions exist *at all times* while the property

---

[1] For example, "clerk sleeps in the store": *Frisbie v. Fayette Mutual Insurance Co.,* 27 Pa. 325; an "occupied dwelling house": *Cumberland Valley Mutual Protection Co. v. Douglas,* 58 Pa. 419; a tank "known as No. 1 on plant situate," etc.: *Western & Atlantic Pipe Lines v. Home Insurance Co.,* 145 Pa. 346; "smoking is not allowed on the premises": *Hosford v. Germania Fire Insurance Co.,* 127 U. S. 399.

[2] This case is not within the scope of the Act of May 21, 1937, P. L. 774.

is being conveyed," do not lend themselves to plaintiff's interpretation that this particular "declaration" refers only to the time when the policy was issued. The continued employment by plaintiff of a guard was of the highest importance to defendant, as it would naturally decrease greatly the danger of loss by robbery. This declaration was merely an elliptical expression, not uncommon in English speech, for the more accurate phrase: "The following conditions shall exist at all times while the property is being conveyed." Not only is this its fair intendment, but it could have had no other purpose in the policy. We are not holding that the "declaration" as written was a factual representation which impliedly carried with it an affirmative warranty (see *Rathblott v. Royal Indemnity Co.*, 310 Pa. 37) ; what we do hold is that it was not a representation at all, but a contractual obligation somewhat ineptly expressed: see *Joseph Gordon, Inc., v. Massachusetts Bonding & Insurance Co.*, 229 N. Y. 424, 128 N. E. 204. The trial judge was therefore correct in instructing the jury that, if plaintiff had knowledge of this declaration, and if it was not waived by the company, it was a condition of the policy the nonfulfillment of which would forfeit plaintiff's right to recover.

One of the provisions of the policy was: "The Company shall not be liable for loss or damage . . . unless books and accounts are kept by the Assured and are kept in such manner that the Company can accurately determine therefrom the amount of loss." This has uniformly been upheld by the courts as a fair and reasonable protection of insurance companies against exaggerated and fraudulent claims. While there need be only a substantial compliance, "there must be sufficient written evidence to enable the company to determine with accuracy the amount of its liability": *Weinstein v. Globe Indemnity Co.*, 277 Pa. 388, 391; see also *Gorson v. Ætna Accident & Liability Co.*, 283 Pa. 558. The records must "fairly show the stock on hand at the time of the bur-

glary, without being supplemented in major details by the memory of an interested party. . . . They must be of such a character that by ordinary inspection the actual loss may be determined with a fair degree of accuracy": *Garten v. General Accident, Fire & Life Assurance Corporation,* 200 N. Y. Supp. 546, 548. The insured must keep his books in "such a manner that they shall constitute a record of business transactions which a person of ordinary intelligence accustomed to accounts can understand": Cooley's Briefs on Insurance (2d ed.) vol. 3, p. 2818. "No particular method of bookkeeping is required, but the books must themselves furnish the information with reasonable certainty, unaided by oral testimony except . . . to explain the method of keeping them": *Home Insurance Co. of New York v. Williams,* 237 Fed. 171, 176, 177.

In the present case plaintiff offered in evidence such books as he kept, but there was considerable controversy, both by witnesses and counsel, as to whether the amount of the alleged loss could be ascertained from them. Plaintiff's accountant admitted that the records were not sufficient to enable him to determine the individual items of jewelry said to have been involved in the robbery, and that it was only from the memory of plaintiff that such identification could be made. He attempted to calculate the total amount of loss on the basis of an average rate of profit made by plaintiff in preceding years, but the information which the books furnished for the ascertainment of that rate was apparently not sufficiently detailed to assure reasonable accuracy. Under such circumstances the court left it to the jury to say whether this condition in the policy had been complied with, telling them that if plaintiff kept books "enabling a reasonably accurate statement of his accounts to be made, then he complied with this provision, although the books may not have been in a form that would be approved by an expert accountant. If he did not keep such books, if from those books alone, and without recourse to

the plaintiff's memory, it is impossible to ascertain the amount of goods he had on hand at the time of the robbery, then he has failed to comply with this provision and he cannot recover," and the court affirmed a point presented by plaintiff that "The bookkeeping clause does not require that any specific system or form of books be kept, but it is sufficient when books are kept in such a manner as to constitute a record of business transactions which a person of ordinary intelligence can understand." Plaintiff could not justly seek a more favorable presentation.

Criticism is made of the latitude allowed defendant in cross-examination of plaintiff. This was a matter within the sound discretion of the trial judge, and there is nothing to indicate that such discretion was abused or that plaintiff was injured: *Short v. Allegheny Trust Co.,* 330 Pa. 55, 58, 59. Another complaint is directed to the court's refusal to admit in evidence paragraphs of the statement of claim containing an alleged list of the articles taken in the robbery and stating the total amount of the loss, the answers in the affidavit of defense to these averments failing to set forth that defendant, after reasonable investigation, had been unable to ascertain the truth of the alleged facts: *(Goodbody v. Margiotti,* 323 Pa. 529, 539). The affidavit of defense, however, in other paragraphs, denied that there was any robbery or loss whatever; it also averred that defendant had caused an examination to be made of plaintiff's books but was unable to ascertain therefrom the articles alleged to have been stolen or their cost; obviously, these books were the only possible source from which it could have derived information. Moreover, with the rendering of a verdict for defendant the amount of the loss became immaterial and the method of its proof academic.

Judgment affirmed.