## GLOBE INDEMNITY CO. v. COHEN.
### No. 6770.

Circuit Court of Appeals, Third Circuit.

June 29, 1939.

Rehearing Denied Oct. 27, 1939.

See, also, 22 F.Supp. 553.

Harry R. Axelroth, of Philadelphia, Pa. (Axelroth & Porteous, of Philadelphia, Pa., of counsel), for appellant.

T. Henry Walnut, of Philadelphia, Pa., for appellee.

Before DAVIS, BIGGS, and BUFFINGTON, Circuit Judges.

BIGGS, Circuit Judge.

A suit sounding in assumpsit was brought upon two policies of burglary insurance issued by the appellant, Globe Indemnity Company, to the appellee, Cohen, trading as Stewart's Jewelry Shop. One policy, in the face amount of $1,000, was of the kind known as an "open stock policy" and was designed to cover merchandise outside the safe in the appellee's place of business. The other policy, in the face amount of $4,000, covered merchandise in the safe upon the premises. The place of business of the appellee was entered during the week-end of June 19th to June 21st, 1937, and goods were stolen from open stock and from the safe possessing value in excess of the amounts of coverage of the two respective policies. Each policy contained a provision that, "* * * the Company shall not be liable for loss or damages * * * unless books and accounts are regularly kept by the insured and are kept in such manner that the exact amount of loss can be accurately determined therefrom by the Company."

The appellant contends that the books and accounts of the appellee's business were not regularly kept, that is to say, were not kept in such a way that the exact amount of the loss could be accurately determined by the insurance company. Specifically, it contends that the appellee has no records showing the dates of purchase of some articles or the sources from which they were purchased. The trial judge, believing that there was substantial compliance by the appellee with the promissory warranty of the policies embodied in the clause quoted above, sent to the jury the question of whether or not the records of the appellee's business offered in evidence did in fact comply with the provisions of the clause of the policies quoted. He also sent to the jury the question of whether or not the appellant by reason of certain facts referred to hereafter was estopped from denying that the appellee's books and records had been kept in accordance with the terms of the promissory warranty as quoted. The jury rendered a verdict for the appellee for the full amount of the policies. This appeal is taken from the judgment of the court below.

The evidence shows that the primary record of the appellee consisted of what

may be described as a perpetual or continuous inventory composed of loose cards. In short, a card was made out for each item of merchandise in the stock and this card set forth what the item was, what its cost had been to the appellee, and a stock number. The cards made beginning with the year 1933, and thereafter, with the exception of certain ones that represented merchandise purchased by the appellee over the counter, contained additional information by way of a note as to the date of purchase of each item of merchandise and the name of the vendor or firm from which it was purchased. There was also introduced in evidence a ledger showing those sales made by the appellee beginning with the year 1933 until the time of the burglary and a number of invoices showing the purchase in 1933 and thereafter of many of the articles set forth in the card inventory. The appellee also introduced in evidence inventories of his merchandise taken in 1935, 1936 and 1937, and there was some evidence indicating that merchandise in stock was checked against the card inventory in the course of preparation of the inventories. The records referred to were instituted and maintained by the appellee's wife who took an active part in the business.

The appellant's real objection to the sufficiency of the appellee's records consists of the fact that the card inventory of merchandise purchased prior to the year 1933 and of over-the-counter merchandise whenever purchased contains no data whereby a check of the cost of the merchandise to the appellee can. be obtained from the persons or firms from which the purchases were made and that therefore the value ascribed to them by the appellee cannot be verified by the appellant from independent sources. The appellee states that he did not retain vouchers for the merchandise purchased prior to 1933 and that there never. were vouchers for the over-the-counter merchandise. Upon the other hand the card inventory of merchandise purchased beginning with the year 1933 (other than the over-the-counter merchandise referred to) shows not only the cost to the appellee of the merchandise purchased, but also the names of the persons or firms from whom it was purchased.

■ In demanding that such independent sources be available for checking all values put upon the stolen merchandise by the appellee, does the appellant demand something not required by the promissory warranty of the policies? Certainly if the books and accounts of one engaged in a commercial enterprise are to be deemed to have been regularly kept, they must be kept in such wise that the insurance company may be able to ascertain the essential facts of the loss from them. The insurance company may not be compelled to pay losses unless such records have been kept by the assured as will permit the insurance company to investigate the losses in the usual way and be able to ascertain that the loss was actually incurred by the insured. In order for books and records to be "regularly kept" within the language of policies such as those in the case at bar they must be such as will enable the insurance company to ascertain the amount of the loss accurately and fairly. In our opinion it may not be said that the books and records are regularly kept when they afford no data from which the insurance company may ascertain from some source independent of the insured that the insured did in fact purchase the articles alleged to have been stolen.

■ In setting forth this rule we are not setting forth a rule of thumb. The appellee might have kept vouchers or receipts for the articles purchased by him. He might have set forth the source of the purchased articles upon his card index as was done by him in respect to so many of the articles which were stolen, but unless he can afford the insurance carrier some data as to the value and existence of articles alleged to have been stolen from sources which are ordinarily available under commercial practices, he cannot recover for such losses upon the policies in the case at bar. Unless there be some record of purchases made, the records of a retail jewelry business may not be deemed to be regularly kept or maintained in such a wise that the exact amount of loss may be accurately determined.

[4-7] As was stated by the trial court, absolute accuracy is not required. Nor is it necessary that the records be kept upon such a system of bookkeeping as would satisfy an expert accountant. Lumbermen's Mutual Insurance Co. v. Johnson Lumber Company, 5 Cir., 53 F.2d 940; Weinstein v. Globe Indemnity Co., 277 Pa. 388, 121 A. 316; Gorson v. Aetna Accident & Liability Co., 283 Pa. 558, 129 A. 590. But we are constrained to the belief, none the less, that if the amount of the loss

is to be determined accurately and from books or records regularly kept there must be available to the appellant such information as will permit a check of the cost price of the merchandise from sources not entirely dependent upon the good faith of the appellee. The word "accuracy" as used in the policies is not a word of art. It possesses its usual and ordinary meaning. It signifies merely the state or quality of being accurate, freedom from mistake or error. In the case at bar, in respect to those items of merchandise for which the appellee cannot supply the name of the vendor or a bill of lading or voucher, we think that it cannot be said that amount of loss can be ascertained with accuracy or from records regularly kept within the terms of the promissory warranty. We think that such is the meaning of the decisions in the Pennsylvania cases cited above.

■ We are of the opinion therefore that unless there was an estoppel, the trial court committed error in permitting the jury to ascertain and include in the amount of its verdict those losses which represented merchandise for which no independent check could be made by the appellant from the vendor and for which no bill or voucher or data from independent sources was available. In expressing this conclusion we do not intend to lay down any rigid rule. The cards upon which the name of the vendor was written as well as the cost of the article are sufficient and there was no error upon the part of the trial judge in permitting the jury to ascertain the amount of these losses and to include them in the sum of the verdict. Vouchers, receipts, or cards prepared by the appellee, showing the nature of the merchandise and the sources of it, are also within the terms of the promissory warranty of the policies. The question presented is not one of the form of the records kept by the appellee. It is rather one of substantial compliance with the terms of the warranty whatever might be the form of the books and records kept.

■ A further question arises, however. Upon rebuttal, the appellee introduced evidence showing that he had sustained an earlier loss from a theft of jewelry stolen from the display window of his place of business. At the time of this loss a policy issued by the appellant, similar to the open stock policy in the instant case, was in his possession. This policy contained a clause of promissory warranty similar to those contained in the policies sued upon. In the course of settling the earlier loss an assistant claims manager employed by the appellant,[1] came to the store and examined the appellee's records which were identical with those in evidence except in so far as the records in evidence show the purchase of merchandise after the earlier robbery. The assistant claims manager thereupon made up a proof of loss, which being submitted to the appellant was duly paid by it. In response to a question asked by the appellee's wife, the assistant claims manager expressed himself as entirely satisfied with the way in which the appellee's records were kept. The policy under which the loss arising out of the 1935 robbery was paid was No. 245,932.[2] It was placed in force upon March 13, 1934, and expired March 13, 1935. A new policy was then issued to the appellee by the appellant in the same amount and this expired upon March 13, 1936. Upon the expiration of this policy another policy was issued by the appellant to the appellee which expired upon March 13, 1937, and on or about this date a new policy was issued by the appellant to the appellee, No. 249,494, which expired upon March 13, 1938. This was the open stock policy in effect at the time of the losses described in the case at bar. All these policies were for identical coverage and seem to have been similar in terms. The warranty provisions of the various policies seem to have been identical except that in No. 249,494, the word "assured" was changed to the word "insured". The trial judge charged the jury that under the circumstances just related, it would be justified in finding that the appellant was estopped to deny the sufficiency of the "early records", viz., those prior to 1933, offered by the appellee to show the extent of his loss in the case at bar and which did not contain the names of the vendors of the merchandise. Was this instruction

[1] The same individual was also employed by the appellant to investigate the losses occurring in the later robbery and aided in the preparation of the proof of claim which the appellee submitted to the appellant prior to commencement of the suit at bar.

[2] The number of this policy is given elsewhere in the testimony as No. 245,532.

erroneous? At this point it should be noted that each of the policies here sued upon contains a clause providing, "No condition or provision of this policy shall be waived or altered except by endorsement hereon or attached hereto signed by the President of the Company; nor shall notice to any representative, nor shall knowledge possessed by any representative, or by any other person, be held to effect a waiver or change in any part of this contract."

In support of its contention that the circumstances narrated are insufficient to work an estoppel prohibiting the appellant from attempting to show the insufficiency of the appellee's early records, the appellant cites Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 S.Ct. 133, 46 L.Ed. 213; Satz v. Massachusetts Bonding & Insurance Co., 243 N.Y. 385, 153 N.E. 844, 59 A.L.R. 606, and Stanulevich v. St. Lawrence Life Association, 228 N.Y. 586, 127 N.E. 315. The learned judge, 22 F.Supp. 553, 556, stated that the cases cited " * * * hold that an insurance company is not estopped from setting up the breach of a warranty of an existing fact contained in a policy even though the company, through its agent, knew of the true fact at the time the policy was issued. They do not hold that an insurance company may by word and deed indicate to its insured that his performance of a promissory warranty to keep books and accounts is satisfactory, and afterward, in an action brought against it on a later policy containing the same warranty set up that the very records previously approved do not comply with the requirements of the policy. This is not a case of varying the terms of a written contract by parol evidence. It is rather a case of permitting a party to a contract to show performance to the satisfaction of the other party."

In support of his position the trial judge cites New York Life Insurance Co. v. Eggleston, 96 U.S. 572, 24 L.Ed. 841, and similar decisions. In the Eggleston case Mr. Justice Bradley, calling attention to the decision of the Supreme Court in Knickerbocker Life Insurance Company v. Norton, 96 U.S. 234, 24 L.Ed. 689, makes plain that forfeitures are not favored in law and that courts are prompt to seize hold of any circumstances that indicate an election upon the part of an insurance company to waive a forfeiture. In the Eggleston case the insured had not paid a premium due upon the very life insurance policy sued upon and the defense offered by the company of nonpayment of premium was sought to be avoided by beneficiaries by showing that the company had failed to give notice to the insured of the place where payment was required. The lower court had held that the insured behaved reasonably in awaiting the company's notice before paying the premium. The Supreme Court affirmed this ruling. In New York Life Insurance Co. v. Dumler, 5 Cir., 282 F. 969, suit was brought upon a policy delivered to an insured at the very time he was in ill health. The company endeavored to avoid liability under the policy upon this ground. The court held that the delivery of the policy and the acceptance of premiums by the company, the delivering agent being aware of the illness of the insured, constituted a waiver of the condition upon which the policy was issued, namely that the assured did not suffer from any ailment or disease. The policy contained the usual provision that conditions, of which the good health of the insured was one, contained either in the policy or the application might be waived only by designated officers of the company.

Stephen's Pleading, 239, defines estoppel as a preclusion in law which prevents a man from alleging or denying a fact in consequence of his own previous act, allegation or denial of a contrary tenor. Estoppel and waiver are closely allied, the more strict authorities adhering to the view that estoppel requires legal consideration to support it. Estoppel may be described as an intentional relinquishment of a known right by a party for a consideration. Waiver may be defined by omitting the last three words of the preceding sentence. In the case at bar if there was relinquishment by the appellant of its rights under the clause of promissory warranty, there was consideration from the appellee by way of the premiums paid upon the new policies. An act of relinquishment is necessary, however, and it is fundamental that such can be effected only by a person possessing authority to that end. It is clear from the record that the assistant claims manager of the appellant did not purport to waive or alter the provisions of the clauses of the warranty contained in the policies of insurance. At the most it must be assumed that he expressed to the ap-

pellee his belief that the records which he examined fulfilled the conditions of the warranty. If we correctly apprehend the appellee's position, it is that the representation of the appellant's agent with his knowledge of the appellee's books was attributable to the appellant and that therefore the appellant, having issued the policies sued upon and having received the premiums therefor, is estopped to deny the sufficiency of the records of the appellee or that it possessed knowledge of those methods, in effect issuing the policies in the light of such representation and such knowledge. The express language of the clause last quoted, that " * * * knowledge possessed by any representative, or by any other person * * *" shall not be held to effect a waiver or change of the contracts of insurance, negatives such a conclusion. The statement made by the assistant claims manager as to the sufficiency of the appellee's records could not serve even to bind the appellant to the payment of the 1935 loss. Certainly the assistant claims manager by the statement referred to could not bind his company to the payment of future losses upon future policies whether based upon the same records or not.

■ In addition to the foregoing we think that the new contracts of insurance, the policies sued on, though phrased as was the 1935 policy upon which the loss was paid by the appellant, created anew the duty imposed upon the appellee to maintain his records in accordance with the clauses of warranty, and the fact that the appellee's performance of that warranty in the past was deemed sufficient by a representative of the company and the company paid the claim, is insufficient to relieve the appellee of performance in accordance with the terms of the warranty under the new contracts of insurance. To hold that performance of a warranty need not be in accordance with the terms of written instruments because of actions of the parties taking place prior to the execution of the contracts, seems to us to very the unambiguous terms of the instruments by parol evidence of what took place prior to the embodiment of the intentions of the parties in the contracts. That such a course is prohibited is made plain by the decisions in Northern Assurance Co. v. Grand View Building Association, supra; Satz v. Massachusetts Bonding & Insurance Co., supra, and Stanule-

vich v. St. Lawrence Life Association, supra.

■ The question presented is a narrow one and the existence of estoppel or waiver must depend in every case upon the facts and circumstances presented. See Bakhaus v. Caledonian Insurance Co., 112 Md. 676, 685, 77 A. 310, 313, quoted with approval in Royal Insurance Co. v. Drury, 150 Md. 211, 132 A. 635, 643, 45 A.L.R. 582. We are of the opinion none the less, that the appellant was not estopped to deny the sufficiency of the "early records" of the appellee and that the court below erred in its charge to the jury in this respect.

Accordingly the judgment of the court below is reversed and the cause is remanded with the direction to grant a new trial and to proceed in accordance with this opinion.

BUFFINGTON, Circuit Judge (dissenting).

Satisfied as I am that this case was tried without error by Judge Maris and that its reversal works a great wrong on the plaintiff, I record my dissent.

This is not a case where the rights of the parties depend on the construction of provisions of a then issued policy, but one where the acts of the parties during continuous policies, the adjustment of prior losses, the approval of the plaintiff's inventory method, the issuing of succeeding policies, and the subsequent collection of premiums, created a condition in which it would be now grossly inequitable to defeat an honest claim for goods actually stolen, where no fraud was involved and the insured was advised, where a like earlier loss was ascertained and paid and the insured lulled into a course of action which the insurance company now repudiates, created a condition where it would be grossly inequitable to allow the insurance company to now defeat the admittedly honest claim by the contention that the method of bookkeeping which it induced the insured to follow was wrong and where it had assured the plaintiff it was right.

In the motion for a new trial the trial judge said:

"On October 25, 1935, the plaintiff's store window had been broken into and certain merchandise stolen. At that time he was carrying a burglary insurance policy with the defendant having substantially

the same provisions as the policies in suit. Following the burglary the assistant claims manager of the defendant came to his place of business, examined the perpetual inventory cards, including all the early cards, and other records and prepared a proof of claim which the plaintiff executed, and the defendant then paid the amount of the loss. The plaintiff's witnesses testified that the defendant's representative was asked whether he cared to make any recommendation for the improvement of the system and he expressed himself as thoroughly satisfied with the manner in which the records were kept. Several months later the defendant issued the policies in suit and accepted the premiums thereon paid by the plaintiff".

In my judgment Judge Maris committed no error when after the verdict of the jury—to which this question of estoppel was left to it to determine—he refused to enter judgment n. o. v. for the defendant, and rightly held: "This is not a case of varying the terms of a written contract by parol evidence. It is rather a case of permitting a party to a contract to show performance to the satisfaction of the other party."