## Maruca v. American Casualty Co.

*Joseph J. Baer*, for plaintiff.
*Wade K. Newell*, for defendant.

DUMBAULD, P. J., December 31, 1942.—The insurance policy, the basis of this action in assumpsit, is denominated in the printed form "Messenger and Office Robbery Policy."

It undertakes to indemnify the assured in the following language:

"In consideration of the premium herein provided, the company does hereby agree to indemnify the assured named in the declarations as follows:

"I. For all loss of or damage to property (as hereinafter defined), occasioned by robbery or attempt thereat, from a custodian while OUTSIDE the assured's premises."

The amount of the policy is $1,000. The premium paid is $10.

Plaintiff alleges that after midnight of March 23, 1940, he took from his cash register and other containers in his place of business a sum in cash amounting to $950, placed it in a bag, such as used by banks in transporting cash, and started home.

As he came to his truck, parked in an alley off Pittsburgh Street, a man approached from the darkness, pointed a gun at him, said: "Give me that bag," took the money and departed.

A search of the vicinity, made by plaintiff and Officer Piorvarchik, to whom the robbery was immediately reported, failed to discover any trace of the robber.

Defendant denied that there was any robbery, but there is no complaint as to the way that question was submitted to the jury. The verdict in favor of plaintiff establishes the foregoing facts.

Defendant's motion for judgment n. o. v. is based on "Exclusion 5" of "Conditions," contained in the policy in these words:

"The company shall not be liable for any loss . . .

"(5) Unless books and accounts are kept by the assured and are kept in such manner that the exact amount of loss can be accurately determined therefrom by the Company."

Defendant at the trial contended that plaintiff kept no books of accounts whatever. The jury negatived this contention.

It is now insisted that the book produced by plaintiff (plaintiff's exhibit 3) fails to comply with the requirements of condition 5, above quoted. Defendant argues that this record is so manifestly deficient that

the court should, as a matter of law, have directed a verdict for defendant, and should now, as a necessary consequence, enter judgment for defendant n. o. v.

A correct determination of this question requires a careful examination of the facts and a reasonable application of the law.

Plaintiff opened a produce market at 10-12 Main Street, Uniontown, on March 21, 1940. He had previously operated at that location when a fire caused a cessation of his business. He had taken out the policy in suit on February 15, 1940. He made his first sales on March 21st. He advertised and conducted a "Grand Opening" on Saturday, March 23, 1940. He kept a cash register in his place of business. This register was of the sealed type, which did not run a tape showing individual sales. The condition of the tabulation was disclosed by an examination of the total sum at the close of business. Plaintiff each day determined the amount of cash sales for that day by examination of this register and noted the amount of that day's sales in a loose-leaf ledger.

On page 2 of this ledger, we find the following notations:

"March 21, 1940.
Amount sold daily.
Cash Register.

| | |
|---|---|
| 21 | $ 87.07 |
| 22 | 86.46 |
| 23 | 275.67 |
| * * * * * * * | |
| 23 Louis Spatfore paid loan | $275.00 |
| 23 Dubbs flowers | 14.00." |

The trial judge admitted this exhibit over objection and submitted to the jury the determination of the question whether there was sufficient compliance with the record-keeping requirements of the policy.

We think the opinion of Mr. Justice Stern in Price v. Century Indemnity Co., 333 Pa. 337, 341, justifies such submission.

The condition of the policy in that case was an exact duplicate of "Condition 5" in our policy.

It is there held that there need be only a substantial compliance with the condition.

". . . 'there must be sufficient written evidence to enable the company to determine with accuracy the amount of its liability': *Weinstein v. Globe Indemnity Co.*, 277 Pa. 388, 391; See also *Gorson v. Aetna Accident & Liability Co.*, 283 Pa. 558. The records must 'fairly show the stock on hand at the time of the burglary, without being supplemented in major details by the memory of an interested party. . . . They must be of such a character that by ordinary inspection the actual loss may be determined with a fair degree of accuracy': *Garten v. General Accident, Fire & Life Assurance Corporation*, 200 N. Y. Supp. 546, 548. The insured must keep his books in 'such a manner that they shall constitute a record of business transactions which a person of ordinary intelligence accustomed to accounts can understand': Cooley's Briefs on Insurance (2d ed.) vol. 3, p. 2818. 'No particular method of bookkeeping is required, but the books must themselves furnish the information with reasonable certainty, unaided by oral testimony except . . . to explain the method of keeping them': *Home Insurance Co. of New York v. Williams*, 237 Fed. 171, 176, 177."

From the description of the documentary evidence given by Mr. Justice Stern, in his opinion, it was much more meager, fragmentary, and unsatisfactory than is the book in our case. Our exhibit discloses to the accountant of average intelligence that there is a record of cash sales reported by a cash register for the day of the robbery, amounting to $275.67. It also shows that, on the same day, Louis Spatfore paid to

plaintiff, in cash, a loan in the sum of $275, and that the Dubb's Flower concession netted $14.

This record fairly supports the inference that at closing time, on March 23, 1940, plaintiff had in his possession at least $564.67. Plaintiff's testimony, explanatory of how this book was kept, was competent. There was testimony independent of the interested plaintiff as to the character and operation of the cash register. There was testimony independent of the interested plaintiff of a witness who helped take the money from the cash register, helped count it and put it in the bag carried by plaintiff at the time of the robbery.

The entries in the book were sufficiently clear to enable the company to assure itself that at the close of business, on March 23, 1940, plaintiff had on that day received at least $564.67.

Whether he did so receive the sum, whether it was counted and put in the bag, as the clerk Carlo says it was, and whether the book disclosed the reasonable probability of such a situation, whether plaintiff was actually robbed—all were questions to be decided by the jury and not by the court.

The trial judge submitted these questions in the following language:

". . . So, if you are satisfied by a fair preponderance of the credible testimony that there was a robbery, then you are to determine from all the testimony first whether this plaintiff kept any records or not.

"If you decide that this book represented the records that he kept from day to day, as he says he did, then you are to determine from the entries in that book whether it is such a record as would have disclosed to the defendant the fact that he had in his possession the sum or sums of money that he claims he put into that bag before he started to his truck.

"The records would not have to disclose the exact amount of money that the robber took from the person

who was robbed. You can see how it would be entirely possible for a person situated as this plaintiff was to have had money in the bag and money in his pockets and, under the conditions, money that the robber would have overlooked, and for the entries in the book to disclose the exact amount of money that the robber possibly can take from the person of the one being robbed would not be possible, and such loss would not, in reasonable contemplation, be capable of being recorded in the records of the business. This provision for records is, as we interpret it, that the insurance company may protect itself by an examination of the record, for the purpose of showing whether or not it was within the range of a reasonable probability that the assured would have the amount of money on his person that he claims to have lost by robbery.

"So, in determining the amount of money that you think this insurance company is legally obligated to pay, in case you have found the question of robbery in favor of the plaintiff, and the question of the keeping of any record at all in favor of the plaintiff, then it would be your duty to ascertain from the record that the plaintiff contends that he kept, whether an examination thereof would have reasonably put the defendant upon notice that all the items for which he claims would have been in that bag, or whether only those that are referred to in the record would reasonably be anticipated to have been in the bag.

"So, from all that testimony, if you have found the two preliminary questions in favor of the plaintiff, you will determine what amount of money actually was taken from this plaintiff capable of being calculated from the record that he now produces as his 'Exhibit 3', in the trial of this case."

Here the charge might well have ended without error.

The portion of the next following paragraph which instructed the jury that, "Should you find that all of

the items that he claims were in the bag should reasonably have been anticipated by an examination of this record, then you would be justified in finding a verdict for the entire amount of this claim," does not now seem to be supported by any evidence contained in the record.

The items not noted in exhibit 3, but described by plaintiff and his witness Carlo, are not such items as could be anticipated by an examination of the book alone.

They must, therefore, be eliminated from the verdict which the jury found, no doubt influenced by this erroneous instruction.

The error may be corrected by an order requiring plaintiff to remit all of the verdict in excess of $564.67, with interest.

We will, therefore, overrule the motion for judgment in favor of defendant n. o. v.

### Order of court

Now, December 31, 1942, upon and after consideration, it is ordered and directed that defendant's motion for judgment n. o. v. be and the same hereby is overruled and dismissed, and, if plaintiff shall, within 30 days from the date of this order, file a remittitur of the sums included in the verdict of the jury in excess of the sum of $564.67, with interest from March 23, 1940, then the prothonotary shall enter judgment for plaintiff, in the sum of $564.67, with interest from March 23, 1940. Upon failure of plaintiff to file such remittitur, the court, of its own motion, will grant a new trial.