## Fleishman v. Royal Indemnity Co.

*Blumberg & Sork,* for plaintiff.

*Axelroth & Porteous,* for defendant.

ALESSANDRONI, J., May 26, 1948.—This is an action in assumpsit to recover upon a mercantile safe burglary policy. Having presented a written motion for binding instructions which was declined and the jury having disagreed, defendant filed this motion for judgment upon the whole record.

For several years plaintiff and a partner, one Harry Ehrlich, conducted a licensed taproom and restaurant at premises 409 Market Street, Philadelphia. On August 9, 1943, they entered into a written contract of indemnity with defendant known as a mercantile safe burglary policy, for a period of one year, which was renewed from year to year.

On August 23, 1945, Ehrlich withdrew from the partnership and thereafter plaintiff continued to operate the business alone for a period of approximately 13 weeks, when on November 13, 1945, after business hours, the premises was forcibly entered, the safe burglarized, and the currency therein removed. The crime was reported to the police promptly but the burglars have never been apprehended. Notice was likewise given promptly to defendant.

Plaintiff claims that the sum of $1,321.36, constituting the net receipts of the business for the 13-week period, was stored in an inner compartment of the safe, and, in addition thereto, the sum of $500, which was the property of his younger son who had recently returned from the service and had turned the money over to his father temporarily for safe keeping, was also contained in the safe.

The defense is now confined to the following customary provision in such policies: "The Company shall not be liable for loss or damage: (1) Unless records are kept by the Insured in such manner that the Company can accurately determine therefrom the amount of loss or damage; . . .". It is contended that this court as a matter of law should conclude that plaintiff's records failed to comply substantially with that condition.

In Price v. Century Indemnity Co., 333 Pa. 337, 341, the court said, in commenting upon a similar provision, ". . . This has uniformly been upheld by the courts as a fair and reasonable protection of insurance companies against exaggerated and fraudulent claims. While there need be only a substantial compliance, 'there must be sufficient written evidence to enable the company to determine with accuracy the amount of its liability': . . ."

In Weinstein v. Globe Indemnity Co., 277 Pa. 388, the court stated at page 391:

"There can be no doubt of the meaning of the words used in the policy. It was the duty of the insured to keep 'books and accounts,' so that, in case of theft, the exact loss could be ascertained 'therefrom,' and unless this was done, or a substantial compliance with the requirement appeared, a verdict for plaintiff was not justified: . . . It is true no particular form of books is required to be kept (26 C. J. 253); the stipulation must be given a reasonable interpretation, and is complied with when the data can be produced which shows the real state of facts, but there must be sufficient written evidence to enable the company to determine with accuracy the amount of its liability. . . ."

In Gorson v. Aetna Accident & Liability Co., 283 Pa. 558, 561, the court further elaborated upon the interpretation of such a provision in the following manner:

". . . While it is true no particular form of books is required, and such stipulations are substantially

complied with when data can be produced which show the real state of facts, yet there must be at least sufficient written evidence to enable a person of ordinary intelligence, familiar with accounts, 'to determine with accuracy the amount of liability.'

"To a certain extent each case must be judged on its own circumstances, and no uniform rule, further than as above stated, can be laid down for determining the sufficiency of accounts in general; but, in the present case, plaintiff failed to produce, or show that he had systematically kept, any data from which his loss could be determined. He had been in business only a short time, and having regard to this circumstance, as well as to the small size of the trade involved, his counsel contends it would be unreasonable to expect him to install an elaborate accounting system; but the fact is, he made no pretense of keeping even the usual books of account. . . ."

In determining whether there has been substantial compliance with this provision of the policy, the nature of the business and the type of risk assumed by defendant becomes important. We are not concerned with the value of stock in trade or inventory in the process of manufacture as in the cited cases. Only the contents of plaintiff's safe were insured and in this particular case only cash is involved. The books of account therefore need not be as intensive or as extensive as those necessary to determine the value of other forms of personal property. The only inquiry is the amount of cash in the safe at the time of the commission of the crime.

The nature of the business is equally important. Purchases of beer and liquor are required to be made in cash under the law. This is also true of sales, and plaintiff conducted the balance of his business on the same basis, including the payment of wages and the purchase of food and miscellaneous services. It would be unreasonable to require this insured to maintain

records other than those fairly and substantially reflecting the operation of his particular business. We are not impressed with defendant's argument that plaintiff failed to maintain a bank account. By taking advantage of modern banking facilities, and especially night deposits, he would have no need for this type of policy.

Plaintiff's accountant, who was called as a witness on his behalf, prepared monthly statements for plaintiff from the "Day Book", which was maintained by plaintiff's son, and likewise prepared his income tax from this record. It might be noted, and significantly we think, that plaintiff's net adjusted income for tax purposes for the year in which this burglary occurred was substantially in excess of the amount claimed to have been lost as a result thereof, increased to reflect the full year's business. Moreover, not only the return but the uncontradicted evidence established that this was his only source of income.

A computation for the net receipts of the business beginning for the period beginning August 27, 1945, and ending November 10, 1945, discloses an amount substantially equal to the claim. We have checked this computation against the daily entries made in the book of account and find it to be accurate. We find, moreover, that the system used, though rudimentary, was intelligible and adequate to disclose the real state of facts.

Each day plaintiff's son entered expenditures for food in a separate column, including therein items of less than 25 cents. Between the column describing the purchase and the column listing the costs, the receipts for that day's sale of food was entered. The same process was followed for the purchase of beer and liquor, and miscellaneous services and supplies. The amount received from the sale thereof was entered vertically in a comparable place. At the end of the

week the payroll was posted, showing the name of and the amount received by each employe, and the recapitulation of the total expenses for the three classes was then entered. On the inside of the back cover of the book, the net amount of cash received during the week and deposited in the safe on Saturday night after the close of business was entered and erased weekly for the insertion of the new amount.

Here we have data systematically maintained, crude though it might be. Defendant maintains that the book of account is wholly defective since it does not purport to reflect personal withdrawals of the individual owner, but since this was an individual enterprise there would be no reason for recording such withdrawals. Regardless of the inappropriateness of such entries, however, we are of the opinion that the absence of withdrawals did not preclude a finding of substantial compliance as a matter of law. Defendant's contention in this respect, as well as the remaining arguments in support of the motion now before us, affect the credibility and cast suspicion upon the integrity of plaintiff in presenting the claim. They are matters for the jury's consideration and not sufficient to warrant the court in declaring as a matter of law that the records kept by plaintiff are totally inadequate for the purpose of this policy.

Defendant was chargeable with notice of the character of the risk it assumed. After accepting business of this nature, it cannot then ask to be relieved of liability because the records are not unimpeachable or free from every possible attack for alleged deficiencies. The possibility of inaccuracy is not sufficient to justify a court in entering a judgment in spite of a verdict. We believe that substantial compliance with such a provision means a conscientious effort to keep systematically the usual books of account, customary in a business of the same size, character and nature. Defendant's motion therefore must be dismissed.

*Order*

And now, to wit, May 26, 1948, defendant's motion for judgment upon the whole record is dismissed.